IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 02-60639
Summary Calendar

AMERICAN HERITAGE LIFE INSURANCE COMPANY; FIRST COLONIAL
INSURANCE COMPANY; AND FIDELITY NATIONAL CORPORATION, d/b/a
REPUBLIC FINANCE, INC.

Plaintiffs-Appellants,

versus

ELLIS B. LANG

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Mississippi
_____

February 26, 2003

Before HIGGINBOTHAM, SMITH, and CLEMENT, Circuit Judges.

CLEMENT, Circuit Judge:

Plaintiffs-Appellants assert that the district court erred in denying their motion to compel arbitration. This Court remands to the district court for adjudication of Defendant-Appellee's claim of fraud in the inducement.

I. FACTS & PROCEEDINGS

On September 13, 2001, Plaintiffs-Appellants American Heritage Life Insurance Company ("American Heritage"), First Colonial Insurance Company ("First Colonial"), and Fidelity National Corporation d/b/a Republic Finance, Inc. ("Fidelity") brought suit in the U.S. District Court for the Northern District of Mississippi to enforce four

1

arbitration agreements signed by Defendant-Appellee Ellis B. Lang ("Lang") in connection with loan agreements and insurance contracts he entered into with Fidelity.

Lang only attended school through the first grade. As a result, Lang cannot read and can only write his own name.

Lang executed loans with Fidelity on December 10, 1993; February 26, 1995; May 30, 1995; July 10, 1995; December 27, 1995; October 31, 1996; November 11, 1997; October 28, 1998; September 17, 1999; and October 30, 2000. Lang signed identical arbitration agreements with Fidelity on four of these occasions (November 11, 1997; October 28, 1998; September 17, 1999; and October 30, 2000). The arbitration agreements were stand-alone agreements. See Richard A. Bales, Compulsory Arbitration of Employment Claims: A Practical Guide to Designing and Implementing Enforceable Agreements, 47 Baylor L. Rev. 591, 594 (1995) (noting that "arbitration provisions can be created as st and-alone agreements or they can be inserted as part of broader written . . . agreements"); Roger J. Perlstadt, Timing of Institutional Bias Challenges to Arbitration, 69 U. Chi. L. Rev. 1983, 1992 (2002) (stating that "an arbitration agreement is often not a stand-alone contract between two parties, but rather a short clause inserted in a much broader contract"); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 397-98, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967) (discussing arbitration agreement that was not a stand-alone agreement).

On appeal, the Appellants and Appellee presented this Court with the four arbitration agreements and related affidavits as evidence. None of the loan or insurance documents are before this Court.

There is a dispute as to whether Lang knew that he was signing arbitration agreements on the aforementioned dates. Jimmy Taggart ("Taggart"), the manager of Fidelity's branch office in Columbus, Mississippi, claimed in his Second Affidavit that he "explained each loan and insurance instrument, document or paper to" Lang. In his affidavit, Lang agreed that Taggart "stated the amount of my loan, when my monthly payments were due, and how much I had to pay for the insurance." Taggart also stated that on each of the aforementioned dates, he told Lang "this is an arbitration agreement, and if you have any claims against [Fidelity] about this note, you agree to go through an arbitrator." According to Taggart, Lang "never said he did not understand, and he never asked me any questions about or to further explain, arbitration or the arbitration agreements."

In his Affidavit, Lang claims he informed Taggart that he "was unable to read and understand the loan documents and insurance papers." For this reason, Lang asked Taggart "to explain each of the documents [Lang] signed." Taggart allegedly stated that "each document [Lang] signed was either dealing with the loan or the insurance." According to Lang, Taggart "never mentioned arbitration." Lang stated that "[p]rior to a discussion with [his] attorney, [he] did not understand the term arbitration or what it involved," and he "would not have signed an arbitration agreement if [he] had known what arbitration was and had been given a meaningful answer to [his] direct question with regards to what [he] was signing."

Lang signed all four stand-alone arbitration agreements. However, Taggart only signed three of them. The fourth one (dated October 30, 2000) bears the signature of a third party, who is presumably a Fidelity employee. This evidence casts doubt on

3

Taggart's statement in his Second Affidavit that he was the person responsible for explaining all of the arbitration agreements to Lang on each of the aforementioned dates. Taggart heavily qualified his statements in his Second Affidavit, stating that he based his knowledge on "the best of [his] recollection and . . . on [his] usual and customary procedure and practice and a review of [Fidelity's] records." Lang does not qualify his statements in his Affidavit.

The district court denied the Appellants' Motion to Compel Arbitration and Stay Proceedings, holding that the dispute over whether Taggart properly explained the arbitration agreement was subject to adjudication by a court rather than an arbitrator under Prima Paint, 388 U.S. at 403-4.

## II. STANDARD OF REVIEW

This Court reviews "the grant or denial of a motion to compel arbitration de novo." Webb v. Investacorp, 89 F.3d 252, 257 (5th Cir. 1996); Snap-On Tools Corp. v. Mason, 18 F.3d 1261, 1264 (5th Cir. 1994).

## III. ANALYSIS

This Court has jurisdiction over denials of motions to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C.A. § 16(a) (West 1999); McDermott Int'l v. Underwriters at Lloyds, 981 F.2d 744, 746-47 (5th Cir. 1993). However, the FAA does not create any independent subject-matter jurisdiction. United Offshore Co. v. Southern Deepwater Pipeline Co., 899 F.2d 405, 407 (5th Cir. 1990) (citing Southland Corp. v. Keating, 465 U.S. 1, 15 n.9, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984)).

> To sue in federal court to enforce an arbitration claim, a petitioner must demonstrate the existence of federal subject matter jurisdiction on the *underlying* contract claim. As a result, suits to compel arbitration may only be brought in federal court if diversity of citizenship or a federal question exists.

4

<u>Bank One, N.A. v. Shumake</u>, 281 F.3d 507, 513 (5th Cir.) (emphasis in original), <u>cert. denied</u> 123 S. Ct. 94 (2002).

The Appellants based their suit on diversity jurisdiction. Neither party argues on appeal that diversity jurisdiction is lacking. However, this court has "a duty to raise the issue of subject-matter jurisdiction <u>sua</u> <u>sponte</u>." <u>H&D Tire and Automotive-Hardware, Inc. v. Pitney Bowes Inc.</u>, 227 F.3d 326, 328 (5th Cir. 2000). The instant dispute involves ten loans and the purchase of multiple, allegedly unnecessary insurance products over seven years. Lang asserts eight distinct claims against the Appellants and seeks significant compensatory and punitive damages well in excess of $75,000. Based on this evidence, it is facially apparent that the damages sought or incurred are likely above $75,000. <u>De Aguilar v. Boeing Co.</u>, 11 F.3d 55, 57-8 (5th Cir. 1993); <u>Asociacion Nacional De Pescadores A Pequena Escala O Artesanales De Colombia (ANPAC) v. Dow Quimica De Columbia S.A.</u>, 988 F.2d 559, 566 (5th Cir. 1993); <u>St. Paul Reinsurance Co. Ltd. v. Greenberg</u>, 134 F.3d 1250, 1253 (5th Cir. 1998).

Lang correctly recognizes that illiteracy alone is not a sufficient basis for the invalidation of an arbitration agreement. <u>Mixon v. Sovereign Camp., W.O.W.</u>, 125 So. 413, 415 (Miss. 1930) (holding that "there cannot be two separate departments in the law of contracts, one for the educated and another for those who are not"). Lang argues, however, that his illiteracy is relevant because Taggart allegedly failed to inform Lang that he was signing arbitration agreements. Therefore, Taggart fraudulently induced Lang to sign the arbitration agreements. Since Lang did not know what he was signing, he argues that he could not have "agreed" to arbitrate. Lang claims he is attacking the making of the agreements to arbitrate rather than the arbitration agreements themselves.

The Appellants contend that Lang is attacking the arbitration agreements rather than the making of the agreements. In addition, the Appellants argue that the arbitration agreements are valid and that the federal policy favoring arbitration mandates that the parties be compelled to arbitrate their dispute.

The first question to be addressed in adjudicating a motion to compel arbitration under the FAA is "whether the parties agreed to arbitrate the dispute in question. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." Webb, 89 F.3d at 258 (internal citations omitted).

First, the arbitration agreements may not be valid. "[I]t is axiomatic that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" Hill v. GE Power Systems, 282 F.3d 343, 347 (5th Cir. 2002) (quoting AT&T Technologies v. Communications Workers of America, 475 U.S. 643, 648, 89 L. Ed. 2d 648, 106 S. Ct. 1415 (1986)). Lang contends that he did not know he was signing arbitration agreements; therefore, he did not "agree" to them and they are not valid.

Normally, doubts must be resolved in favor of arbitration, United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 583, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960), but the "federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties" or to "the determination of who is bound" by the arbitration agreement. Fleetwood Enters. Inc. v. Gaskamp, 280 F.3d 1069, 1073-74 (5th Cir. 2002). Instead, this Court determines

6

whether there is a valid agreement to arbitrate and who is bound by it based on "ordinary contract principles." Id.

"It is a widely accepted principle of contracts that one who signs or accepts a written instrument will normally be bound in accordance with its written terms." Samson Plastic Conduit & Pipe Corp. v. Battenfeld Extrusionstechnik GMBH, 718 F. Supp. 886, 890 (M.D. Ala. 1989); St. Petersburg Bank & Trust Co. v. Boutin, 445 F.2d 1028, 1032 (5th Cir. 1971) (holding that "[o]ne who reads a written document, or signs it (even without reading it) is bound by its terms"). By this logic, Lang, illiterate or not, would be bound by the terms of the arbitration agreements to which he affixed his signature. St. Petersburg Bank, 445 F.2d at 1032; Laborers' Pension Fund v. A & C Envtl., Inc., 301 F.3d 768, 781 (7th Cir. 2002) (citing Paper Express, Ltd. v. Pfankuch Maschinen, 972 F.2d 753, 757 (7th Cir. 1992)) (holding t hat parties should be held to contracts, even if the contracts are in foreign languages or the parties cannot read or understand the contracts due to blindness or illiteracy).

However, ordinary contract principles require a "meeting of the minds" between the parties in order for agreements to be valid. Louisville & N. R. Co. v. Kentucky, 161 U.S. 677, 692, 16 S. Ct. 714, 40 L. Ed. 849 (1896) (holding that "[i]t is a fundamental principle in the law of contracts that, to make a valid agreement, there must be a meeting of the minds"); United States v. Barnes, 83 F.3d 934, 938 (7th Cir. 1995). Lang's alleged ignorance of the fact that he was signing arbitration agreements signifies that he may not have consented to them and a meeting of the minds may not have existed. Volt Infor. Scis. v. Bd. of Trs., 489 U.S. 468, 478-79 (1989) (holding that "the FAA does not require parties to arbitrate when they have not agreed to do so" and "[a]rbitration under the

7

[FAA] is a matter of consent, not coercion"); <u>French v. Shoemaker</u>, 81 U.S. 314, 333, 20 L. Ed. 852 (1871) (holding that "consent . . . is the essence of every valid contract").

In addition, ordinary contract principles prohibit parties from engaging in fraud to induce other parties to sign agreements. <u>Samson Plastic</u>, 718 F. Supp. at 890 (holding that "[a]s a general rule, ignorance by one party as to the terms of an agreement [may] constitute grounds for relief [if] it was induced by acts of the other party") (citing <u>Southern Nat'l Bank v. Crateo</u>, 458 F.2d 688, 693 (5th Cir. 1972)). Taggart's alleged failure to inform Lang that he was signing arbitration agreements may be regarded as fraud in the inducement of the arbitration agreements if Taggart "misrepresented the facts, . . . acted in less than good faith, or . . . had notice of [Lang's] ignorance." <u>Southern Nat'l Bank</u>, 458 F.2d at 692. Lang's Affidavit indicates that Taggart knew that Lang was illiterate, a fact that Taggart does not deny in his Second Affidavit. Therefore, Taggart had notice of Lang's ignorance, which indicates that the alleged failure to identify and explain the arbitration agreements may constitute fraud in the inducement. <u>Id.</u>; <u>Bhatia v. Johnson</u>, 818 F.2d 418, 421 (5th Cir. 1987) (holding that if the claim of fraud focuses specifically on the arbitration agreement, then the federal court may consider it). Lang further contends that Taggart misrepresented the facts by identifying the arbitration agreements as loan or insurance documents, which could also constitute fraud in the inducement. <u>Southern Nat'l Bank</u>, 458 F.2d at 692; <u>Bhatia</u>, 818 F.2d at 421.

In sum, there is sufficient evidence to indicate that the arbitration agreements may not have been valid under ordinary contract principles. In particular, Lang may not have "agreed" to the arbitration agreements, and Taggart, through his notice of Lang's

ignorance and alleged misrepresentation of the facts, may have fraudulently induced Lang into signing the arbitration agreements.

Second, the dispute in question does not fall within the scope of the arbitration agreement. Lang contends that he was fraudulently induced into signing the arbitration agreements. R.M. Perez & Assoc., Inc. v. Welch, 960 F.2d 534, 538 (5th Cir. 1992) (holding that "the type of fraud alleged is [not] determinative of arbitrability"). "Under Prima Paint Corp. v. Flood and Conklin Mfg. Co., 388 U.S. 395, 404, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967), and its progeny, the central issue in a case like this is whether the plaintiffs' claim of fraud relates to the making of the arbitration agreement itself or to the contract as a whole." R.M. Perez, 960 F.2d at 538; Bhatia, 818 F.2d at 421 (holding that courts "must determine whether [the] complaint is directed at the entire contract or only the arbitration clause."). The Supreme Court held that

> [i]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language [of the FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

Prima Paint, 388 U.S. at 403-4.

On appeal, Lang does not challenge Taggart's identification or explanation of the loan or insurance documents, only his alleged failure to inform Lang that he was signing arbitration agreements. Lang signed four identical arbitration agreements that were not contained in a clause of a larger contract, but instead existed as stand-alone agreements. Cf. R.M. Perez, 960 F.2d at 538 (discussing claim of fraud as it related to contract containing an arbitration clause). Indeed, no loan or insurance documents are even before this Court. In this light, it is clear that Lang's claim of fraud in the inducement is limited

9

to the arbitration agreements themselves, not the loan or insurance documents. Cf. Bhatia, 818 F.2d at 422 (holding that the plaintiff's claim of fraud in the inducement was not limited to the arbitration agreement, and thus his claim was arbitrable under Prima Paint); R.M. Perez, 960 F.2d at 538 (holding that plaintiffs' claims of fraud related to contract containing arbitration clause rather than the arbitration clause alone); American Security Ins. Co. v. Lang, No. 02-60104 (Nov. 7, 2002) (unpublished) (holding that "[i]f the alleged 'fraudulent inducement focused specifically on the arbitration provision, the court may first address the issue'") (quoting Bhatia, 818 F.2d at 421). Under these facts, Lang's claim of fraud in the inducement is not arbitrable because it goes to the making of the arbitration agreement. Prima Paint, 388 U.S. at 403-4. Therefore, it is for the court to adjudicate the fraud claim. Id.

As the party resisting arbitration, Lang bears the burden of showing that the dispute is not arbitrable under § 4 of the FAA. Bhatia, 818 F.2d at 422 (citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 637 F.2d 391 (5th Cir., Unit B, Feb. 1981)). Lang's Affidavit, Taggart's heavily qualified and somewhat inaccurate statements in his Second Affidavit, and the four stand-alone arbitration agreements indicate that this dispute may not be arbitrable because the parties may not have a valid arbitration agreement, Southern Nat'l Bank, 458 F.2d at 692, and Lang's claim of fraud in the inducement goes to the making of the arbitration agreements. Prima Paint, 388 U.S. at 403-4.

Accordingly, this Court remands to the district court for adjudication of Lang's claim of fraud in the inducement.