COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




 
 
  
  
  
  
 IN RE:  BUNZL USA, INC.,
  
                             Relator.
  
  
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
  
 No. 08-03-00306-CV
  
 AN ORIGINAL PROCEEDING
  
 IN MANDAMUS
 
 




 

O
P I N I O N

In this mandamus proceeding, Bunzl USA, Inc. argues that the trial court abused its
discretion by refusing to compel arbitration. 
We deny the requested writ.

Procedural
Background

Manuel Avila filed suit against Bunzl USA, Inc., Bunzl
Distribution, Inc., Bunzl Distribution USA, Inc., Bunzl Dallas, Inc., Paul Lorenzini,
and Elizabeth Isam. 
He alleged that he was employed by the defendants as a sales
representative between June 26, 1993 and November 29, 2001 and that he was
terminated because of his race or ethnicity.  
He asserted causes of action for violations of the Texas Commission on
Human Rights Act and for intentional infliction of emotional distress.  Lorenzini, the
president of Bunzl USA, Inc., filed a special
appearance, which the court granted.








The remaining defendants filed a
motion seeking to compel Avila to arbitrate his claims pursuant to the Federal
Arbitration Act (FAA).  They also filed a
memorandum in support of their motion.  Attached
to the memorandum was a copy of a ASalesperson Employment Agreement,@ dated December 6, 1993, between Bunzl USA and Avila.

The Salesperson Employment Agreement
recites that Avila desires to be employed or continue employment and that Bunzl desires to employ or continue to employ him.  It further recites that Avila=s position with Bunzl
will provide him with access to Bunzl=s customers and confidential or
proprietary business information.  The
Agreement then sets out provisions common to a non-compete
contract.

The Agreement also includes a
paragraph labeled AArbitration and Governing Law.@ 
This paragraph states:

[A]ny dispute arising out of, pursuant to, or relating to this
Agreement, or to the employment or the termination of Employee by Company,
shall be resolved by binding arbitration in St. Louis County, Missouri before
one (1) arbitrator pursuant to the rules of the American Arbitration
Association for commercial arbitration. 
This Agreement shall be interpreted in accordance with and governed by
the law of Missouri.  The sole function
of the arbitrator is to interpret and enforce the Agreement under Missouri law,
and . . . the arbitrator shall have no authority to alter, amend, modify or
change the Agreement. . . . .

 








The next paragraph provides, ANo modification or amendment of any
provision of this Agreement is effective unless it is in writing and signed by
the parties to this Agreement.@        The Agreement concludes with a signature
block that has three lines.  The first
line is blank.  The second line has ABy:@ in typewriting at the beginning of
the line and the word ACOMPANY@ in typewriting beneath the line.  ABunzl/Papercraft@ is printed by hand on the line.  The third line has AEMPLOYEE@ in typewriting beneath it.  On the line is an illegible signature dated A12-6-93.@ 
No affidavit accompanied the copy of the Agreement that was attached to
the memorandum.

At the hearing on the defendants= motion to compel arbitration, Avila=s counsel maintained that the
Agreement was not valid because, among other things, it was not properly signed
by Bunzl. 
Counsel argued that the lack of a signature called into question whether
the parties ever reached an agreement. 
The court also expressed concern over the missing signature, stating
that the existence of an agreement to arbitrate was the defendants= Aweakest point.@ 
The defendants= counsel responded to this argument by asserting that an
arbitration agreement does not have to be signed to be valid.  Neither side presented any evidence at this
hearing or requested an evidentiary hearing. 
The court denied the motion to compel arbitration.








The defendants filed a motion to
reconsider.  They also filed a memorandum
in support of this motion.  The
defendants argued in the memorandum that the missing signature does not render
the Agreement unenforceable.  They
attached several documents to the memorandum, including a copy of the
Salesperson Employment Agreement and the affidavit of Elizabeth Isam.[1]  Isam averred that
she is the regional human resources manager for Bunzl
Distribution Southwest, L.P., which Avila wrongly named in this suit as Bunzl Dallas, Inc. 
She further stated that she is the custodian of records for Bunzl Southwest, that she maintains the personnel jackets
of Bunzl employees within her region of authority,
that the attached copy of the Salesperson Employment Agreement is Aa true and accurate copy of Mr. Avila=s Employment Agreement,@ that the Agreement was kept in his
employment jacket so it could be reviewed if questions arose regarding the
parties= rights and obligations under the
Agreement, and that she personally reviewed the Agreement before Avila was
terminated to ensure that Bunzl acted in accordance
with its obligations under the Agreement.

The court conducted a hearing on the
motion.  Again, with the exception of the
documents attached to the motion, neither party presented any evidence or
requested an evidentiary hearing.  The
court denied the motion to reconsider.

The Parties= Arguments








Bunzl asserts that the trial court abused
its discretion in refusing to compel arbitration.  It argues that it presented overwhelming
evidence that its employment relationship with Avila affected interstate
commerce and that Avila=s claims fall within the scope of the arbitration
provision.  Bunzl
also argues, although it is the only relator in this
proceeding, that all the defendants are entitled to invoke the arbitration
provision under the doctrine of equitable estoppel.  Finally, Bunzl
argues that Missouri is the proper venue for the arbitration proceeding.  Curiously, despite the trial court=s statement that the absence of Bunzl=s signature on the Agreement is the weakest part of its case,
Bunzl=s petition does not address this issue.

In his response, Avila argues that Bunzl failed to establish that the parties assented to the
Agreement because Bunzl did not sign it, there was no
evidence that the employee signature on the Agreement was his, and there was no
other evidence to show that the parties assented to the Agreement=s terms.  Avila also argues that his claims do not fall
within the scope of the arbitration provision.

In its reply brief, Bunzl again fails to offer any argument regarding the
absence of its signature.  The only
reference to this issue is an assertion that Avila did not Aclaim or argue to the Trial Court
that the agreement presented was not the Parties= Agreement.@  
Appended to this assertion is a footnote, which acknowledges that Avila
argued below that the Agreement Awas unenforceable because Bunzl had not signed the agreement.@ 
Bunzl then points out, without citation to the
record, that it responded to this Aspecious
argument@
in its motion for reconsideration.[2]
[3]








Standard of
Review

A writ of mandamus will issue to
correct a clear abuse of discretion when there is no other adequate remedy at
law.  Walker v. Packer, 827 S.W.2d
833, 839 (Tex. 1992) (orig. proceeding). 
There is no other adequate remedy at law when a trial court improperly
denies a motion to compel arbitration under the FAA.  In re Halliburton Co.,
80 S.W.3d 566, 573 (Tex. 2002); Jack B. Anglin Co.
v. Tipps, 842 S.W.2d 266, 272-73 (Tex. 1992).








A trial court clearly abuses its
discretion if it reaches a decision so arbitrary and
unreasonable as to amount to a clear and prejudicial error of law.  Walker, 827 S.W.2d
at 839.  With respect to the
resolution of factual issues, this means that we may not substitute our
judgment for that of the trial court, even if we would have decided the issue
differently.  Id.
at 839-40.  Instead, we may not
overturn the trial court=s decision unless that court could reasonably have reached
only the opposite decision.  See id.
at 840.  The relator has the burden of establishing that the trial court
abused its discretion.  Id.

With respect to the resolution of
legal issues, our review is much less deferential.  Id. 
The trial court has no discretion in determining what the law is or in
applying the law to the facts.  Id.  Therefore, a clear failure by the trial
court to analyze or apply the law correctly constitutes an abuse of
discretion.  Id.

The
Procedure to be Followed on a Motion to Compel Arbitration

In Tipps,
the Texas Supreme Court set out the procedure to be followed when a motion to
compel arbitration has been filed:

[T]he
trial court may summarily decide whether to compel arbitration on the basis of
affidavits, pleadings, discovery, and stipulations.  However, if the material facts necessary to
determine the issue are controverted, by an opposing
affidavit or otherwise admissible evidence, the trial court must conduct an
evidentiary hearing to determine the disputed material facts.

 

Tipps, 842 S.W.2d at 269.  In arriving at this procedure, the supreme court drew from established summary judgment
procedure.  See id.; see also
In re Jebbia, 26 S.W.3d 753, 756-57 (Tex.
App.--Houston [14th Dist.] 2000, orig. proceeding) (AA summary motion to compel
arbitration is essentially a motion for partial summary judgment, subject to
the same evidentiary standards.@).

Our sister appellate courts have
elaborated on the procedure set out in Tipps.  See, e.g., Jebbia, 26 S.W.3d at 756-57; Jennings, 936
S.W.2d at 18-19; Prudential Sec. Inc. v. Banales,
860 S.W.2d 594, 597 (Tex. App.--Corpus Christi 1993, orig. proceeding).  The Fourteenth Court of Appeals explained the
correct procedure this way:








The party alleging an arbitration agreement must
present complete summary proof of his Acase in
chief@ that an agreement to arbitrate requires arbitration
of the issues in dispute.  If that
summary proof intrinsically raises issues about the procedural enforceability
of the agreement, the movant=s summary proof should include any evidence that
resolves those issues without creating an issue of material fact.  Naturally, the non-movant,
to resist summary arbitration, needs only to raise an issue of material fact
about a necessary element of its opponent=s Acase in chief@ or
present some evidence supporting every element of a defensive claim that there
is no enforceable agreement to arbitrate.

If the movant has proven
there is an arbitration agreement, as a matter of law, the court must compel
arbitration, and a presumption arises that all disputed issues between the
parties must be arbitrated.  If issues of
material fact remain about whether there is an enforceable agreement to
arbitrate, the trial court must promptly allow the party claiming the right to
arbitrate an evidentiary hearing on the matter.

 

Jebbia, 26 S.W.3d at 757
(citations omitted).  We agree that this is the correct
procedure for the trial court and the parties to follow.

Establishing
the Existence of an Arbitration Agreement








Public policy favors the submission
of disputes to arbitration.  In re Conseco Fin. Servicing Corp., 19 S.W.3d 562, 566 (Tex.
App.--Waco 2000, orig. proceeding).  But
arbitration is also a creature of contract. 
Am. Heritage Life Ins. Co. v. Lang, 321 F.3d
533, 537 (5th Cir. 2003); Ysleta Indep. Sch. Dist. v. Godinez, 998 S.W.2d 700, 702 (Tex. App.--El Paso 1999, no pet.).  Therefore, a party cannot be compelled to
arbitrate a dispute unless he has agreed to do so.  Lang, 321 F.3d at
537.  A party seeking to compel
arbitration must first establish that an arbitration agreement exists.  Id. at 537; In re
Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 (Tex. 1999); In re
Anaheim Angels Baseball Club, Inc., 993 S.W.2d 875, 877 (Tex. App.--El Paso
1999, orig. proceeding). When we are called upon to decide whether the
parties have agreed to arbitrate, we do not resolve doubts or indulge a
presumption in favor of arbitration.  Lang,
321 F.3d at 537-38; Jebbia,
26 S.W.3d at 757.  Instead, we apply
standard contract principles to determine whether a valid arbitration agreement
exists.  Lang, 321
F.3d at 538; Godinez, 998 S.W.2d at
702.

Under standard contract principles,
the presence or absence of signatures on a written contract is relevant to
determining whether the contract is binding on the parties.  According to Corbin, if the parties have
unconditionally assented to terms stated in an unsigned document, the document
constitutes a binding written contract, regardless of whether it is
signed.  1 Arthur Linton Corbin, Corbin on Contracts
' 2.10, at 168 (Joseph M. Perillo rev., 1993). 
But a party=s signature on a written contract is Astrong evidence@ that the party unconditionally
assented to its terms.  Id.  In the absence of a signature, other
evidence must be relied upon to prove the party=s unconditional assent.  Id. 
Furthermore, the parties may provide that the signature of each party is
a prerequisite to a binding written contract. 
Id. at 165.








The Texas Supreme Court has relied on
these principles from Corbin to decide whether parties were bound by an
instrument that only one party signed.  See Simmons & Simmons Constr.
Co. v. Rea, 155 Tex. 353, 286 S.W.2d 415 (Tex. 1955).  In Rea, a general contractor and a
subcontractor orally agreed upon the terms of a contract, which the general
contractor immediately reduced to a written instrument that included a
signature block and provided for the furnishing of a bond after the instrument
was signed.  The general contractor then
delivered the instrument to the subcontractor with directions to obtain a bond,
sign the instrument, and return the instrument, along with the bond, so that
the general contractor could sign the instrument.  The general contractor also told the
subcontractor to be available to begin work when the materials became
available.  Id. at 357, 286 S.W.2d at 417. 
After the subcontractor followed these instructions, the general
contractor repudiated the agreement and refused to sign the instrument.  Id. at 355, 286
S.W.2d at 416.  The jury returned
a verdict in favor of the subcontractor, finding that the parties intended for
the written instrument to be binding regardless of whether it was signed by
both parties.  Id. at 355-56, 286 S.W.2d at 416-17.

In an opinion by Justice Calvert, the
supreme court concluded that the evidence was legally
insufficient to support the verdict.  The
court ruled that there was nothing in the general contractor=s words or conduct that would
reasonably raise an inference Athat he intended to assent to the instrument in the absence
of the signatures of the parties or that he intended to waive signing as a
condition of such assent.@  Id. at 359, 286 S.W.2d at 419.








Thus, the question of whether a
written contract must be signed to be binding is a question of the parties= intent.  See, e.g., Scaife v. Associated Air
Ctr. Inc., 100 F.3d 406, 410 (5th Cir. 1996); ABB Kraftwerke
Aktiengesellschaft v. Brownsville Barge & Crane,
Inc., 115 S.W.3d 287, 292 (Tex. App.--Corpus Christi 2003, no pet. h.).  But see McCulley
Fine Arts Gallery, Inc. v. AX@ Partners, 860 S.W.2d 473, 477 (Tex. App.--El
Paso 1993, no writ) (stating, in dicta, that Aexecution and delivery of the
contract with intent that it become mutual and binding on both parties@ is an element of a binding
contract).  Therefore, it is generally a
question for the fact finder to answer.  Scaife, 100 F.3d at 410.  In this regard, Texas law is in accord with
Missouri law.  See, e.g., Stege v. Hoffman, 822 S.W.2d 517, 518 (Mo. Ct. App.
1991) (AA signature is not always essential
to the binding force of an agreement and whether an unsigned writing
constitutes a binding contract depends upon the parties= intention.@); Sanders v. DeWitt, 579
S.W.2d 707, 711 (Mo. Ct. App. 1979) (AThe object of a signature is to show
mutuality or assent which may be shown in other ways as, for example, by acts
or conduct of the parties.@).

Texas law is also in accord with
decisions applying the FAA.  Although the
FAA requires an arbitration agreement to be written, it does not expressly
require the agreement to be signed by the parties.  See 9 U.S.C.A. ' 3 (West 1999); Valero Ref., Inc.
v. M/T Lauberhorn, 813 F.2d 60, 63-64 (5th Cir.
1987).  Nevertheless, a party seeking to
enforce a purported arbitration agreement must establish that the parties
agreed to arbitrate the dispute.  Lang,
321 F.3d at 537. 
In the absence of signatures, other evidence has been held sufficient to
establish the parties= assent.








For example, in Valero, the
court stated, AIt is established that a party may be
bound by an agreement to arbitrate even in the absence of his signature [and]
[o]rdinary contract principles determine who is bound
by a written arbitration agreement.@ 
813 F.2d at 64. 
The court noted that the party attempting to avoid the arbitration
agreement acknowledged in its pleadings that the agreement existed and that it
had executed the agreement.  That party=s counsel stated at a hearing before
the trial judge that there were no problems with the agreement=s authenticity.  Based on these facts, the appellate court
held that there was sufficient evidence in the record to uphold the trial court=s finding that the parties assented
to the arbitration agreement.  Id.

In another case, the defendants
agreed to build a home for the plaintiff. 
The plaintiff attempted to avoid an arbitration agreement included
within the written contract by arguing that the defendants did not properly
sign the contract and therefore did not demonstrate the assent necessary to
form a binding contract.  Stinson v. America=s
Home Place, Inc., 108 F. Supp. 2d 1278, 1280, 1283 (M.D. Ala. 2000).  A federal district judge noted that Aa proper signature is by no means the
only way a party can manifest assent to a contract.@ 
Id. at 1283.  The judge found that the defendants
demonstrated their assent to the contract by following through on their
contractual obligation to build the home. 
Id. 

Application
of the Law to the Facts of this Case








From the foregoing discussion of the
law, it is clear that Bunzl had the burden in the
trial court of establishing the existence of an agreement to arbitrate.  Oakwood Mobile Homes, 987 S.W.2d at 573; Jebbia,
26 S.W.3d at 757.  Because Bunzl did not sign the Agreement, Bunzl=s burden included establishing that
the parties intended to be bound regardless of whether the contract was signed
by both parties.  See Jebbia, 26 S.W.3d at 757; see also Rea, 155 Tex.
at 357-59, 286 S.W.2d at 417-19 (suggesting that signatures may be a condition
precedent to the effectiveness of a contract); Jennings, 936 S.W.2d at
18-19 (holding that the party seeking to compel arbitration has the burden of
establishing that conditions precedent to arbitration have been satisfied).  The question of the parties= intent was a fact question for the
trial court to resolve.  See Scaife, 100 F.3d at 410.  We cannot overturn the trial court=s resolution of this fact question
unless Bunzl establishes that the trial court could
reasonably have reached only the opposite decision.  See Walker, 827
S.W.2d at 840.  Moreover, if Bunzl found itself unable to establish, as a matter of law,
that the parties intended to be bound regardless of whether the contract was
signed, it should have requested an evidentiary hearing.  See Jebbia, 26 S.W.3d at 758.  But
Bunzl did not request an evidentiary hearing below
and does not complain in this Court of the trial court=s failure to conduct such a hearing.

The defendants provided the trial
court with Isam=s affidavit, which states that the
Agreement is Aa true and accurate copy of Mr. Avila=s Employment Agreement,@ that the Agreement was kept in his
employment jacket so it could be reviewed if questions arose regarding the
parties= rights and obligations under the
Agreement, and that she personally reviewed the Agreement before Avila was
terminated to ensure that Bunzl acted in accordance
with its obligations under the Agreement. 
This is some evidence that Bunzl considered
itself bound by the Agreement.[4]








The trial court also had the
Agreement itself to review.  Although the
Agreement has a signature block intended for Bunzl=s representative, it was never
signed.  The trial court also noted that
the Agreement states, ANo modification or amendment of any provision of this
Agreement is effective unless it is in writing and signed by the parties to
this Agreement.@  (Emphasis
added).  This provision and the blank
signature block are evidence that the parties did not intend to be bound until
both parties signed the Agreement.  See
Scaife, 100 F.3d at 410-11 (holding that
signatures were required where, among other things, contract contained
signature block, along with a provision that amendments had to be in signed
writings); Rea, 155 Tex. at 358-59, 286 S.W.2d at 418-19 (holding that
signatures were required where, among other things, contract had signature
block).








From this conflicting evidence, the
trial court could have reasonably concluded that Bunzl
did not establish the existence of an agreement to arbitrate.  Therefore, the court did not abuse its
discretion by refusing to compel arbitration.

Conclusion

For the reasons stated herein, the
petition for writ of mandamus is denied.

 

SUSAN
LARSEN, Justice

January 8, 2004

 

Before Panel No. 1

Larsen, McClure, and Chew,
JJ.

 











[1]The
other documents relate to whether the arbitration provision encompasses Avila=s claims and whether the Agreement
affects interstate commerce.





[2]Avila=s counsel argued before the trial court
that the missing signature called into question whether Bunzl
manifested assent to the Agreement.  For
example, in reference to the provision requiring modifications to be signed by
the parties, counsel argued, AI
would suggest to the Court that it=s
not reasonable to believe that they intended modifications or amendments to be
required to be signed by the parties, but not the agreement itself to be signed
by both parties.@   This was sufficient to preserve this issue
for review.  See Weekley
Homes, Inc. v. Jennings, 936 S.W.2d 16, 18 (Tex. App.--San Antonio 1996,
writ denied) (holding that party resisting arbitration preserved issue by
raising it orally before the trial court and by pointing to controverting
evidence within the movant=s
proof).





[3]In
oral argument before this Court, Bunzl did address
the missing signature, claiming that the signature was not necessary for two
reasons:  (1) as a matter of law, a
signature was not necessary to complete the contract; and (2) Avila=s counsel judicially admitted that his
client had entered the agreement which included the arbitration clause.  We address the signature issue below.  As to the statement by Avila=s counsel, we cannot agree that it
constituted a judicial admission.

 

A judicial admission is a
formal act, done in the course of judicial proceedings, which dispenses with
the production of evidence and takes the matter out of the domain of
proof.  Gunter v.
Bailey, 808 S.W.2d 163, 164 (Tex. App.--El Paso 1991, no writ).  Such an admission may be by way of facts
admitted by pleadings, by stipulation, and by formal declaration in open court
by a party.  Id.  At the beginning of his argument to the
trial court, Avila=s counsel
said merely: AFirst  of all, Your
Honor, I think it=s very
importantBdo you
have the agreement the plaintiffBthe
agreement that my client entered into?@  We do not find this was an admission that
Avila was bound by the contract to arbitrate, but was simply directing the
judge=s
attention to the item he wanted to discuss. 
This does not rise to the level of a clear, deliberate and unequivocal
statement required to constitute a judicial admission.  See Horizon/CMS
Healthcare Corp. v. Auld, 34 S.W.3d 887, 905 (Tex. 2000).





[4]Although
Bunzl did not make this argument below or in this
Court, we note that Bunzl=s
employment of Avila could be some evidence that it considered itself bound by
the Agreement. See, e.g., Stinson, 108 F. Supp. 2d at 1283 (finding that
party manifested assent by performing under the contract); Halliburton,
80 S.W.3d at 568-69 (holding that an employee accepted the employer=s offer to resolve future disputes
through arbitration by continuing to work after being notified that continuing
to work for the employer would constitute acceptance of the arbitration
agreement).  We also note, however, that
the Agreement is dated December 6, 1993, and Avila alleges that his employment
began in June of that year.  The
Agreement does not provide that Avila=s
employment is contingent upon the Agreement, nor does it provide that
employment constitutes acceptance of the Agreement.  Thus, Bunzl did not
necessarily manifest its assent to the Agreement by employing Avila.

It is not even
clear that Bunzl USA, the only relator
in this proceeding, did in fact employ Avila. 
Although the Agreement purports to be between Avila and  ABunzl USA,@
it contains the words ABunzl/Papercraft@
in the signature block, and Isam=s affidavit indicates that Avila was
employed by ABunzl Distribution Southwest, L.P.@  Another affidavit attached to the defendants= memorandum in support of their motion
to reconsider states that Avila was employed by APapercraft Albuquerque,@
which Ais one of
the facilities that makes up Bunzl Distribution
Southwest, L.P.@  Lorenzini=s affidavit, attached to his special
appearance, states that Bunzl Distribution Southwest,
L.P. is Aan
indirect subsidiary@ of Bunzl USA.