COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





IN RE: BIG 8 FOOD STORES, LTD., 

 Relator.


§

§

§

§

§



No. 08-04-00255-CV

AN ORIGINAL PROCEEDING

IN MANDAMUS




O P I N I O N

           Relator, Big 8 Food Stores, Ltd. (“Big 8”), asks this Court to issue a writ of
mandamus against Respondent, the Honorable Javier Alvarez, Judge of the County Court at
Law Number Three, El Paso County, Texas. For the reasons stated, we conditionally grant
relief.                             I. SUMMARY OF THE EVIDENCE
           Real Party in Interest, Maria Marquez (“Marquez”) was an employee of Big 8, a
non-subscriber under the Texas Workers’ Compensation Act. Marquez was injured while
in the course and scope of her employment. She sued Big 8 for negligence. Big 8 moved to
compel arbitration based on a written agreement signed by Marquez. Marquez denied that
she had knowingly agreed to arbitration and argued that the arbitration agreement lacked
consideration, that she was fraudulently induced into signing the agreement, that there was
no meeting of the minds, and that Big 8 had failed to satisfy all the conditions precedent prior
to seeking arbitration. After a hearing, the trial court denied Big 8’s motion to compel
arbitration, without stating the grounds. Big 8 filed a motion to reconsider which was also
denied. This original proceeding in mandamus follows. Real Party in Interest, Marquez,
responded to the Petition for Writ of Mandamus, urging for the first time, that the Federal
Arbitration Act does not apply to the controversy because the agreement does not
substantially affect interstate commerce. She also contends that the agreement is
unenforceable on the grounds of procedural unconscionability.
II. DISCUSSION
           In two issues, Big 8 asserts that the trial court erred in failing to order to arbitration
the negligence claims asserted by Marquez, and that the court should have upheld the
arbitration agreement because Marquez had accepted benefits under the plan. We begin with
a discussion of the standard of review.
A. Standard of Review
           Mandamus will lie only to correct a clear abuse of discretion. Walker v. Packer, 827
S.W.2d 833, 840 (Tex. 1992) (orig. proceeding); In re Jobe Concrete Products, Inc., No. 08-02-00175-CV, 2003 WL 21757512, at *1 (Tex.App.--El Paso July 31, 2003, orig.
proceeding). Moreover, there must be no other adequate remedy at law. Walker, 827 S.W.2d
at 840. An appellate court rarely interferes with a trial court’s exercise of discretion. A clear
abuse of discretion warranting correction by mandamus occurs when a court issues a decision
which is without basis or guiding principles of law. Johnson v. Fourth Court of Appeals, 700
S.W.2d 916, 917 (Tex. 1985) (orig. proceeding); In re Jobe Concrete Products, Inc., 2003
WL 21757512, at *1.
           Mandamus is the proper means for reviewing an order denying arbitration under the
Federal Arbitration Act. Cantella & Co. v. Goodwin, 924 S.W.2d 943, 945 (Tex. 1996) (orig.
proceeding); In re Jobe Concrete Products, Inc., 2003 WL 21757512, at *1. Federal and
State law strongly favor arbitration. Cantella, 924 S.W.2d at 944; In re Jobe, 2003 WL
21757512, at *1. A presumption exists in favor of agreements to arbitrate under the FAA. 
Prudential Sec., Inc. v. Marshall, 909 S.W.2d 896, 898 (Tex. 1995); In re Jobe, 2003 WL
21757512, at *1. Courts must resolve any doubts about an agreement to arbitrate in favor
of arbitration. Cantella, 924 S.W.2d at 944; Marshall, 909 S.W.2d at 899; In re Jobe, 2003
WL 21757512, at *1. Once a party seeking to compel arbitration establishes that an
agreement exists under the FAA, and that the claims raised are within the scope of the
agreement, a trial court has no discretion but to compel arbitration and stay its proceedings
pending arbitration. Cantella, 924 S.W.2d at 944; In re Jobe, 2003 WL 21757512, at *1.
           Arbitration is a creature of contract, and a clause requiring arbitration will be
interpreted under contract principles. In re Jobe, 2003 WL 21757512, at *1; Belmont
Constructors, Inc. v. Lyondell Petrochemical Co., 896 S.W.2d 352, 357 (Tex.App.--Houston
[1st Dist.] 1995, no writ). A party seeking to compel arbitration must establish its right to
that remedy under the contract. In re Jobe, 2003 WL 21757512, at *1; Belmont, 896 S.W.2d
at 357. A clause requiring arbitration will be enforced according to its plain meaning unless
this would defeat the intention of the parties. In re Jobe, 2003 WL 21757512, at *1; Pepe
Int’l Dev. Co. v. Pub Brewing Co., 915 S.W.2d 925, 930 (Tex.App.--Houston [1st Dist.]
1996, no writ). The parties’ agreement and intent to submit to arbitration must be
unambiguous. In re Jobe, 2003 WL 21757512, at *1; Porter & Clements, L.L.P. v. Stone,
935 S.W.2d 217, 220 (Tex.App.--Houston [1st Dist.] 1996, orig. proceeding). Construction
of an unambiguous contract is a question of law. In re Jobe, 2003 WL 21757512, at *1; see
MCI Telecommunications Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 650- 51 (Tex.
1999). Because the issue before us is the court’s legal interpretation of the arbitration clause
and the enforceability of the employment agreement, we conclude that de novo review of that
finding is appropriate in this case. Russ Berrie and Co., Inc. v. Gantt, 998 S.W.2d 713, 716
(Tex.App.--El Paso 1999, no pet.), citing Certain Underwriters at Lloyd’s of London v.
Celebrity, Inc., 950 S.W.2d 375, 377 (Tex.App.--Tyler 1996, writ dism’d w.o.j.). But see
Dallas Cardiology Associates, P.A. v. Mallick, 978 S.W.2d 209, 212 (Tex.App.--Texarkana
1998, pet. denied); Pony Exp. Courier Corp. v. Morris, 921 S.W.2d 817, 819-20
(Tex.App.--San Antonio 1996, no writ); Pepe Int’l Dev. Co. v. Pub Brewing Co., 915 S.W.2d
925, 929 (Tex.App.--Houston [1st Dist.] 1996, no writ).
B. The Procedure to be Followed on a Motion to Compel Arbitration

           In Jack B. Anglin Co. v. Tipps, the Texas Supreme Court set out the procedure to be
followed when a motion to compel arbitration has been filed:
[T]he trial court may summarily decide whether to compel arbitration on the
basis of affidavits, pleadings, discovery, and stipulations. However, if the
material facts necessary to determine the issue are controverted, by an
opposing affidavit or otherwise admissible evidence, the trial court must
conduct an evidentiary hearing to determine the disputed material facts. 

Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 269 (Tex. 1992). In arriving at this procedure,
the Texas Supreme Court drew from established summary judgment procedure. See id.; see
also In re Jebbia, 26 S.W.3d 753, 756-57 (Tex.App.--Houston [14th Dist.] 2000, orig.
proceeding) (“A summary motion to compel arbitration is essentially a motion for partial
summary judgment, subject to the same evidentiary standards.”).
           Our sister appellate courts have elaborated on the procedure set out in Tipps. See, e.g.,
Jebbia, 26 S.W.3d at 756-57; Weekley Homes, Inc. v. Jennings, 936 S.W.2d 16, 18-19
(Tex.App.--San Antonio 1996, writ denied); Prudential Sec. Inc. v. Bañales, 860 S.W.2d
594, 597 (Tex.App.--Corpus Christi 1993, orig. proceeding). The Fourteenth Court of
Appeals explained the correct procedure this way:
The party alleging an arbitration agreement must present complete summary
proof of his “case in chief” that an agreement to arbitrate requires arbitration
of the issues in dispute. If that summary proof intrinsically raises issues about
the procedural enforceability of the agreement, the movant’s summary proof
should include any evidence that resolves those issues without creating an
issue of material fact. Naturally, the non-movant, to resist summary
arbitration, needs only to raise an issue of material fact about a necessary
element of its opponent’s “case in chief” or present some evidence supporting
every element of a defensive claim that there is no enforceable agreement to
arbitrate.
 
If the movant has proven there is an arbitration agreement, as a matter of law,
the court must compel arbitration, and a presumption arises that all disputed
issues between the parties must be arbitrated. If issues of material fact remain
about whether there is an enforceable agreement to arbitrate, the trial court
must promptly allow the party claiming the right to arbitrate an evidentiary
hearing on the matter.

Jebbia, 26 S.W.3d at 757 (citations omitted). We agree that this is the correct procedure for
the trial court and the parties to follow in matters of this nature.
C. Establishing the Existence of an Arbitration Agreement
           Public policy favors the submission of disputes to arbitration. In re Conseco Fin.
Servicing Corp., 19 S.W.3d 562, 566 (Tex.App.--Waco 2000, orig. proceeding). But
arbitration is also a creature of contract. Am. Heritage Life Ins. Co. v. Lang, 321 F.3d 533,
537 (5th Cir. 2003); Ysleta Indep. Sch. Dist. v. Godinez, 998 S.W.2d 700, 702 (Tex.App.--El
Paso 1999, no pet.). Therefore, a party cannot be compelled to arbitrate a dispute unless he
has agreed to do so. Lang, 321 F.3d at 537. A party seeking to compel arbitration must first
establish that an arbitration agreement exists. Id. at 537; In re Oakwood Mobile Homes, Inc.,
987 S.W.2d 571, 573 (Tex. 1999); In re Anaheim Angels Baseball Club, Inc., 993 S.W.2d
875, 877 (Tex.App.--El Paso 1999, orig. proceeding). When we are called upon to decide
whether the parties have agreed to arbitrate, we do not resolve doubts or indulge a
presumption in favor of arbitration. Lang, 321 F.3d at 537-38; Jebbia, 26 S.W.3d at 757.
Instead, we apply standard contract principles to determine whether a valid arbitration
agreement exists. Lang, 321 F.3d at 538; Godinez, 998 S.W.2d at 702.
           Under standard contract principles, the presence or absence of signatures on a written
contract is relevant to determining whether the contract is binding on the parties. In re Bunzl
USA, Inc., 155 S.W.3d 202, 209 (Tex.App.--El Paso 2004, orig proceeding). A party’s
signature on a written contract is “strong evidence” that the party unconditionally assented
to its terms. Id., citing 1 Arthur Linton Corbin, Corbin on Contracts § 2.10, at 168
(Joseph M. Perillo rev., 1993).
           Texas law is also in accord with decisions applying the FAA. Although the FAA
requires an arbitration agreement to be written, it does not expressly require the agreement
to be signed by the parties. See 9 U.S.C. § 3 (1999); Valero Ref., Inc. v. M/T Lauberhorn,
813 F.2d 60, 63-64 (5th Cir. 1987). Nevertheless, a party seeking to enforce a purported
arbitration agreement must establish that the parties agreed to arbitrate the dispute. Lang,
321 F.3d at 537. In the absence of signatures, other evidence has been held sufficient to
establish the parties’ assent.
           For example, in Valero, the court stated, “It is established that a party may be bound
by an agreement to arbitrate even in the absence of his signature [and][o]rdinary contract
principles determine who is bound by a written arbitration agreement.” 813 F.2d at 64. The
court noted that the party attempting to avoid the arbitration agreement acknowledged in its
pleadings that the agreement existed and that it had executed the agreement. That party’s
counsel stated at a hearing before the trial judge that there were no problems with the
agreement’s authenticity. Based on these facts, the appellate court held that there was
sufficient evidence in the record to uphold the trial court’s finding that the parties assented
to the arbitration agreement. Id.
           In the case before us, Marquez admits to signing the document, but contends that she
was forced to sign it without understanding what she was signing. Further, after Marquez
was injured on the job, she received and accepted the benefits of the agreement in the form
of payments of her medical bills and expenses and short-term disability payments.
D. Application of the Law to the Facts of this Case
           From the foregoing discussion of the law, it is clear that Big 8 had the burden in the
trial court of establishing the existence of an agreement to arbitrate. Oakwood Mobile
Homes, 987 S.W.2d at 573; Jebbia, 26 S.W.3d at 757. The undisputed factual evidence
before the trial court reflects that Big 8 presented Marquez with an Employee Injury Benefit
Plan which contained an Election and Arbitration Agreement. Marquez signed the copy of
the agreement, which was translated into Spanish, on April 11, 2003 reflecting her agreement
with the arbitration agreement. The document contains two witnesses signatures as well. 
Marquez admits that she signed the agreement but contends now that the agreement should
not be enforced because she did not understand that she was waiving her right to a jury trial
in the event of an on-the-job injury, and she was fraudulently induced into signing the
agreement. Marquez agrees that she received medical bill coverage related to her on-the-job 
injury and did not have to pay any medical bills.
           Big 8 presented evidence that Marquez was present during a benefits meeting when
the benefits program was discussed. Big 8 presented evidence reflecting that Marquez was
present for training on April 4, 2003 from 1:33 p.m. to 2:10 p.m at the offices of Big 8 and
that the meeting was translated into Spanish. Big 8 also presented evidence that Marquez
was provided with a copy of the plan in Spanish and that she was allowed one week to
review the plan and agree to its terms or not. The agreement included in the record reflects
that Marquez signed the agreement on April 11, 2003 in Spanish. Marquez now contends
that “the purported agreement was unenforceable on the grounds of procedural
unconscionability.” Marquez argues that this Court must determine that the agreement is
unconscionable solely because Marquez now contends that she did not understand that she
was agreeing to arbitrate any claims she might have related to an on-the-job injury. 
Upholding such a determination places an impossible burden on an employer and would
allow an employee to, at any time, claim a lack of subjective understanding to the terms of
an agreement, thus making it invalid and impossible to enforce.
           In determining whether a contract is unconscionable or not, the court must look to the
entire atmosphere in which the agreement was made; the alternatives, if any, which were
available to the parties at the time of the making of the contract; the non-bargaining ability
of one party; whether the contract is illegal or against public policy; and, whether the contract
is oppressive or unreasonable. At the same time, a party who knowingly enters a lawful but
improvident contract is not entitled to protection by the courts. In the absence of any
mistake, fraud, or oppression, the courts, as such, are not interested in the wisdom or
imprudence of contracts and agreements voluntarily entered into between parties compos
mentis and sui juris. Such parties to contracts have the right to insert any stipulations that
may be agreed to, provided they are neither unconscionable nor otherwise illegal or contrary
to public policy. It has accordingly been said that, almost without limitation, what the parties
agree upon is valid, the parties are bound by the agreement they have made, and the fact that
a bargain is a hard one does not entitle a party to be relieved therefrom if he assumed it fairly
and voluntarily. A contract is not unenforceable on the ground that it yields a return
disproportionate to the expenditures in time and money, where there has been no mistake or
unfairness and the party against whom it is sought to be enforced has received and enjoyed
the benefits. Marsh v. Marsh, 949 S.W.2d 734, 740 (Tex.App.--Houston [14th Dist.] 1997,
no pet.); Wade v. Austin, 524 S.W.2d 79, 86 (Tex.Civ.App.--Texarkana 1975, no writ).
           One who signs a contract “must be held to have known what words were used in the
contract and to have known their meaning, and he must also be held to have known and fully
comprehended the legal effect of the contract.” Nguyen Ngoc Giao v. Smith & Lamm, P.C.,
714 S.W.2d 144, 146 (Tex.App.--Houston [1st Dist.] 1986, no writ). Illiteracy thus does not
relieve a contracting party of the consequences of his agreement. Id.; Vera v. North Star
Dodge Sales, Inc., 989 S.W.2d 13, 17 (Tex.App.--San Antonio 1998, no pet.); Brown v. Aztec
Rig Equip., Inc., 921 S.W.2d 835, 846 (Tex.App.--Houston [14th Dist.] 1996, writ denied).
Indeed, “[a]bsent proof of mental incapacity, a person who signs a contract is presumed to
have read and understood the contract, unless he was prevented from doing so by trick or
artifice.” Vera, 989 S.W.2d at 17.
           No evidence suggests that Marquez lacked the mental capacity to contract. She argues
that she was rushed to sign the agreement and did not understand its terms. The undisputed
evidence is that she signed the agreement, was injured on the job and actually received and
accepted benefits under the plan. The fact that she now contends that she did not understand
a specific clause or term is immaterial to the validity of the agreement. See id. Accordingly,
if the agreement is enforceable, Marquez ratified it by accepting and retaining its substantial
benefits. See Land Title Co. v. F.M. Stigler, Inc., 609 S.W.2d 754, 756-57 (Tex. 1980);
Daniel v. Goesl, 161 Tex. 490, 341 S.W.2d 892, 895 (1960). In short, Marquez is bound by
the agreement.
E. Applicability of the FAA
           We turn next to Marquez’s contention that the agreement is not within the scope of
the FAA. The evidence presented to the court below establishes that the agreement clearly
states that it is to be governed by Federal law under the FAA. Section 2 of the FAA
provides: 
A written provision in . . . a contract evidencing a transaction involving
commerce to settle by arbitration a controversy thereafter arising out of such
contract or transaction . . . shall be valid, irrevocable, and enforceable, save
upon such grounds as exist at law or in equity for the revocation of any
contract.

9 U.S.C. § 2 (1999).
           “[T]he creation of an employment relationship which involves commerce is a
sufficient ‘transaction’ to fall within section 2 of the Act.” White-Weld & Co. v. Mosser, 587
S.W.2d 485, 487 (Tex.Civ.App.--Dallas 1979, writ ref’d n.r.e.), citing Dickstein v. du Pont,
443 F.2d 783, 785 (1st Cir. 1971). If Marquez’s employment relationship involves
“commerce” within the meaning of section 2, then the FAA governs the arbitration
agreement.
           We agree with our sister court in Austin that “commerce” under the FAA must be
broadly construed. Lost Creek Municipal Util. District v. Travis Indus. Painters, 827 S.W.2d
103, 105 (Tex.App.--Austin 1992, writ denied). If the transaction at issue relates to interstate
commerce, the FAA is implicated. Id. Because Congress intended that the FAA govern
arbitration agreements within the reach of the Commerce Clause, we construe “commerce”
as coextensive with congressional authority to regulate under the Commerce Clause. See
Perry v. Thomas, 482 U.S. 483, 490, 107 S.Ct. 2520, 2525-26, 96 L.Ed.2d 426 (1987); Prima
Paint v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401 n.7, 87 S.Ct. 1801, 1805 n.7, 18
L.Ed.2d 1270 (1967); Foster v. Turley, 808 F.2d 38, 40 (10th Cir. 1986).
           “No commercial enterprise of any kind which conducts its activities across state lines
has been held to be wholly beyond the regulatory power of Congress under the Commerce
Clause.” United States v. South-Eastern Underwriters Ass’n, 322 U.S. 533, 553, 64 S.Ct.
1162, 1173, 88 L.Ed. 1440 (1944). Verlander Family Ltd. Partnership v. Verlander, No. 08-02-00135-CV, 2003 WL 304098, at *2-3 (Tex.App.--El Paso February 13, 2003, no pet.). 
Because Big 8’s business operations fall within the scope of Congress’s regulatory power
under the Commerce Clause, Big 8’s relationship with its employees involves “commerce”
as that term is used in the FAA. It follows that Marquez’s relationship with Big 8 involves
commerce within the meaning of the FAA; the arbitration agreement therefore is enforceable
under the federal statute.
           The FAA applies to all suits in state or federal court when the dispute concerns a
contract evidencing a transaction involving “commerce.” Tipps, 842 S.W.2d at 269-70;
Verlander Family Ltd. Partnership, 2003 WL 304098, at *3; In re Gardner Zemke Company,
978 S.W.2d 624, 626 (Tex.App.--El Paso 1998, orig. proceeding). “Commerce” is broadly
construed and encompasses contracts relating to interstate commerce. Verlander Family Ltd.
Partnership, 2003 WL 304098, at *3; Gardner Zemke, 978 S.W.2d at 626. The issue is not
whether the parties’ dispute affects interstate commerce, but whether their dispute concerns
a transaction that affects interstate commerce. Verlander Family Ltd. Partnership, 2003 WL
304098, at *3; see Tipps, 842 S.W.2d at 272; In re Education Management Corp., 14 S.W.3d
418, 423 (Tex.App.--Houston [14th Dist.] 2000, orig. proceeding). The FAA does not
require a substantial effect on interstate commerce; rather, it requires only that commerce be
involved or affected. In re L & L Kempwood Assoc., L.P., 9 S.W.3d 125, 127 (Tex. 1999)
(orig. proceeding); Verlander Family Ltd. Partnership, 2003 WL 304098, at *3. The
existence of interstate commerce may be shown in a variety of ways: location of
headquarters in another state; transportation of materials across state lines; manufacture of
parts in a different state; billings prepared out of state; interstate mail and telephone calls in
support of a contract. Verlander Family Ltd. Partnership, 2003 WL 304098, at *3; In re
Profanchik, 31 S.W.3d 381, 384-385 (Tex.App.--Corpus Christi 2000, orig. proceeding),
citing Tipps, 842 S.W.2d at 270.
           The Big 8 benefit plan provides that the agreement is governed by the FAA and
includes a specific recitation that establishes that the company is engaged in interstate
commerce. As discussed previously, the United States Supreme Court and Texas courts have
held that an express agreement to be governed by the FAA is controlling and further, the
agreement’s involvement with interstate commerce may be shown in a variety of ways. See
In re Profanchik, 31 S.W.3d at 384-85. This express agreement to be governed by the FAA
is valid regardless of where the goods in question originate or how such goods may be moved
through commerce. The company indicates that it is involved in “purchasing goods and
services from outside Texas which are shipped to Texas; utilizing the interstate mail,
telephone and highway systems; operating facilities serving people from various states; and
recruiting and advertising outside Texas.” There is no evidence to the contrary other than 
Marquez’s argument contained in her response that the FAA should not apply to the
agreement because it involves a question of claims related to the activities of a part-time
worker. We agree that the relationship between an employer who is regularly engaged in
activities related to interstate commerce and its employees is affected by interstate commerce
as a matter of law and implicates commerce clause issues. See Mosser, 587 S.W.2d at 487.
           Because we have found that the arbitration clause is valid and binding on the parties,
we sustain Relator’s Issue Nos. One and Two. Finding also that Relator has no adequate
remedy by appeal, we conditionally grant the petition for writ of mandamus. We are
confident the trial court will grant the relief to which Relator is entitled under the Federal
Arbitration Act and this opinion. We direct the Clerk of this Court to issue the writ only in
the event the trial court does not do so.
 
                                                                  RICHARD BARAJAS, Chief Justice
June 16, 2005

Before Barajas, C.J., McClure, and Chew, JJ.