ACCEPTED
03-15-00408-CV
6669180
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/26/2015 4:34:13 PM
JEFFREY D. KYLE
CLERK

## No. 03-15-00408-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
8/26/2015 4:34:13 PM
JEFFREY D. KYLE
Clerk

In the Third Court of Appeals
Austin, Texas

**ALAN B. RICH D/B/A LAW OFFICE OF ALAN B. RICH,**
*Appellant,*

v.

**CANTILO & BENNETT, L.L.P.,**
**SPECIAL DEPUTY RECEIVER OF SANTA FE AUTO INSURANCE COMPANY,**
*Appellee.*

APPEAL FROM CAUSE NO. D-1-GN-15-000799
98TH JUDICIAL DISTRICT COURT OF TRAVIS COUNTY, TEXAS
HON. AMY CLARK MEACHUM PRESIDING

## BRIEF OF APPELLEE

Christopher Fuller
State Bar No. 07515500
FULLER LAW GROUP
4612 Ridge Oak Drive
Austin, Texas 78731
(512) 470-9544 (Telephone)
cfuller@fullerlaw.org

*Counsel for Appellee*

## ORAL ARGUMENT NOT REQUESTED

# TABLE OF CONTENTS

Index of Authorities ................................................................................... ii

Guide to Citations ..................................................................................... vi

Statement of the Case ..................................................................................1

Statement Regarding Oral Argument ..........................................................2

Issue Presented............................................................................................2

     1.     The district court correctly denied the motion to compel arbitration. [Response to Appellant's Points I and II]

Statement of Facts.......................................................................................2

     A.     Santa Fe's Receivership..............................................................3

     B.     Appellant's Representation..........................................................4

Summary of the Argument............................................................................7

Argument......................................................................................................8

     I.     Standard of Review and Applicable Law..............................................8

     II.     The District Court Correctly Denied the Motion to Compel Arbitration. [Response to Appellant's Points I and II] .........................9

     A.     Appellant failed to prove the existence of an agreement to arbitrate. ...............................................................9

     B.     Appellee's causes of action are not "fee disputes" and fall outside the scope of any arbitration agreement. ................12

     C.     The SDR's statutory causes of action are not arbitrable. ................................................................................16

     D.     The Federal Arbitration Act is reverse pre-empted by operation of McCarron-Ferguson Act......................................24

Conclusion and Prayer ...............................................................................28

Certificate of Compliance ..........................................................................29

Certificate of Service .................................................................................30

# INDEX OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Allegaert v. Perot,*
    548 F. 2d 432 (2d Cir. 1977) ..........................................................................18

*American Heritage Life Ins. Co. v. Lang,*
    321 F.3d 533 (5th Cir. 2003) ........................................................................12

*AXA Financial, Inc. v. Roberts,*
    No. 03-07-00079-CV, 2007 WL 2403210 (Tex. App.—Austin
    2007, no pet.) ..............................................................................................8

*Bard v. Myers,*
    839 S.W.2d 791 (Tex. 1992) .......................................................................26

*Cotten v. Republic Nat'l Bank of Dallas,*
    395 S.W.2d 930 (Tex. Civ. App.—Dallas 1965, writ ref'd n.r.e.)................20

*El Paso Elec. Co. v. Tex. Dept. of Ins.,*
    937 S.W.2d 432 (Tex. 1996) .......................................................................22

*Fidelity Assurance Ass'n v. Sims,*
    318 U.S. 608 (1943)....................................................................................27

*Freis v. Canales,*
    877 S.W.2d 283 (Tex. 1994) .......................................................................11

*G.T. Leach Builders, L.L.C. v. Sapphire V.P., L.P.,*
    458 S.W.3d 502 (Tex. 2015) .......................................................................19

*Greenberg Traurig, LLP v. Nat'l Am. Ins. Co.,*
    448 S.W.3d 115 (Tex. App.—Houston [14th Dist.] 2014, reh'g
    overruled Oct. 7, 2014)........................................................................ 14, 15

*Guardian Consumer Fin. Corp. v. Langdeau,*
    329 S.W.2d 926 (Tex. Civ. App.—Austin 1959, no pet.)............................21

*Hays & Co. v. Merill Lynch, Pierce, Fenner & Smith, Inc.,*
    885 F.2d 1149 (3d Cir. 1989) .............................................................. 17, 18

*In re AdvancePCS Health, L.P.*,
    172 S.W.3d 603 (Tex. 2005) (per curiam) ......................................................8

*In re Big 8 Food Stores, Ltd.*,
    166 S.W.3d 869 (Tex. App.—El Paso 2005, orig. proceeding);........ 9, 11, 14

*In re Gandy*,
    299 F.3d 489 (5th Cir. 2002) ............................................................... 18, 19

*In re Jebbia*,
    26 S.W.3d 753 (Tex. App.—Houston [14th Dist.] 2000, orig.
    proceeding) ....................................................................................... 9, 10, 12

*In re Kellogg Brown & Root, Inc.*,
    166 S.W.3d 732 (Tex. 2005) ...............................................................8, 12

*In re Koch Indus., Inc.*,
    49 S.W.3d 439 (Tex. App.—San Antonio 2001, orig. proceeding)..............10

*In re National Gypsum*,
    118 F.3d 1056 (5th Cir. 1997) ............................................................. 18, 19

*In re Oakwood Mobile Homes,*
    987 S.W.2d 571 (Tex. 1999) .......................................................................10

*J.M. Davidson, Inc., v. Webster*,
    128 S.W.3d 223 (Tex. 2003) .........................................................................9

*Jack B. Anglin Co. Inc. v. Tipps*,
    842 S.W.2d 266 (Tex. 1992) .......................................................................10

*Janvey v. Alguire*,
    628 F.3d 164 (5th Cir. 2010) (op. withdrawn on juris. grounds),
    647 F.3d 585 (5th Cir. 2011) ........................................................ 20, 23, 24

*Javitch v. First Union Secs., Inc.*,
    315 F.3d 619 (6th Cir. 2003) ......................................................................23

*Levy v. Lewis*,
    635 F.2d 960 (2nd Cir. 1980) .....................................................................27

*Meyers v. Moody*,
    693 F.2d 1196 (5th Cir. 1983) ....................................................................20

*Munich Reinsurance Co. v. Crawford*,
    141 F.3d 585 (5th Cir. 1998) ................................................................ 25, 26

*Porter & Clements, L.L.P. v. Stone*,
    935 S.W.2d 217 (Tex. App.—Houston [1st Dist.] 1996, orig.
    proceeding) ...................................................................................9, 11

*Royston, Rayzor, Vickery & Williams, L.L.P. v Lopez*,
    No. 13-1026, 2015 WL 3976101 (Tex. June 26, 2015) ...............................15

*SEC v. Nat'l Sec., Inc., et al.*,
    393 U.S. 453 (1969)..................................................................................27

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984).....................................................................................11

*The Fredericksburg Care Co., L.P. v. Perez*,
    461 S.W.3d 513 (Tex. 2015) .....................................................................26

*U.S. Dep't of Treasury v. Fabe*,
    508 U.S. 491 (1993)............................................................................ 26, 27

*Universal C.I.T. Credit Corp. v. Daniel*,
    243 S.W.2d 154 (Tex. 1951) ......................................................................9

*Universal Marine Ins. Co., Ltd. v. Beacon Ins. Co.*,
    768 F.2d 84 (4th Cir. 1985) .....................................................................27

*Washburn v. Corcoran*,
    643 F. Supp. 554 (S.D. N.Y. 1985) ...........................................................27

*Ysleta Indep. Sch. Dist. v. Godinez*,
    998 S.W.2d 700 (Tex. App.—El Paso 1999, no pet.) ...................................12

**Statutes**                                                           **Page(s)**

11 U.S.C. § 544...........................................................................................18

11 U.S.C. § 547...........................................................................................18

11 U.S.C. § 548...........................................................................................18

TEX. INS. CODE ANN. § 443.001 (West 2015) ........................................................16

TEX. INS. CODE ANN. § 443.001(e).................................................................25

TEX. INS. CODE ANN. § 443.001(e)(3, 4) ...............................................17

TEX. INS. CODE ANN. § 443.001(e)(7) ................................... 25, 26, 28

TEX. INS. CODE ANN. § 443.011(f) .........................................................22

TEX. INS. CODE ANN. § 443.154(m)....................................................3, 17

TEX. INS. CODE ANN. § 443.204 ..............................................................16

TEX. INS. CODE ANN. § 443.205 ..............................................................16

**Treatises**                                                                          **Page(s)**

65 Am. Jur. 2d *Receivers* § 88 (2015) ....................................................21

65 Am. Jur. 2d *Receivers* § 371 (2015) ..................................................21

# GUIDE TO CITATIONS

Citations to the Clerk's Record will be CR [page], referencing the Clerk's Record followed by the page number.

Citations to the Reporter's Record will be [vol.] RR [page], referencing the volume of the Reporter's Record, followed by page number. Appellee may provide a reference to the line numbers in the transcript following the Reporter's Record page. Those will be cited as [vol.] RR [page] [line number].

Volume 3 is the exhibit volume. The exhibits will be cited as follows: 3 RR PX[exhibit number] for Plaintiff's exhibits.

References to Appellant's brief are App. Br. at [page number].

An appendix is attached to this brief and is cited by tab, *e.g.*, App'x Tab __.

**TO THE HONORABLE THIRD COURT OF APPEALS**:

Appellee, CANTILO & BENNETT, L.L.P., Special Deputy Receiver ("SDR") of Santa Fe Auto Insurance Company ("Santa Fe"), files this brief requesting that the Court affirm the district court's order and would respectfully show as follows.

## STATEMENT OF THE CASE

Appellee, CANTILO & BENNETT, L.L.P., SDR of Santa Fe, filed suit against Alan B. Rich (among others) on February 27, 2015. Appellee's claims against Appellant arise from an insurance delinquency proceeding under the Texas Insurer Receivership Act (Chapter 443 of the Texas Insurance Code) against Santa Fe, an insolvent Texas insurance company. CR 3-23. The suit seeks monetary relief and asserts statutory claims for fraudulent transfers and voidable preferences, claims under the Texas Uniform Fraudulent Transfer Act, and common law claims for breach of fiduciary duty, negligence, and aiding and abetting breach of fiduciary duty.

The Honorable Amy Clark Meachum of the 201st District Court of Travis County, Texas, issued an Order Denying Defendant Alan Rich's Motion to Compel Arbitration and Plea in Abatement on June 29, 2015, disposing of Rich's motion. CR 183-184. This appeal followed.

1

## STATEMENT REGARDING ORAL ARGUMENT

This is an appeal from an order denying a motion to compel arbitration and plea in abatement. Appellee does not believe oral argument would aid the Court in deciding this appeal. However, if the Court decides oral argument is necessary, Appellee requests the opportunity to participate.

## ISSUE PRESENTED

1. The district court correctly denied the motion to compel arbitration. [Response to Appellant's Points I and II]

## STATEMENT OF FACTS

In this lawsuit, the Appellee is the SDR appointed pursuant to section 443.151 of the Texas Insurance Code to oversee the liquidation of Santa Fe, an insolvent Texas auto insurance company. Pursuant to that status, Appellee filed suit against certain former officers, directors and attorneys for Santa Fe under statutory causes of action authorizing an SDR to recover preferential and/or fraudulent transfers of Santa Fe funds. In addition to the statutory claims, the SDR asserts common law claims for negligence, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty against Appellant and another defendant. Appellant is one of the attorney defendants and was not an officer, director or affiliate of Santa Fe.

### A. Santa Fe's Receivership

On March 8, 2013, the 419th Judicial District Court, Travis County, Texas, (the "Receivership Court"), entered an Order Appointing Rehabilitator and Permanent Injunction, appointing the Commissioner of Insurance as Rehabilitator of Santa Fe. CR 3-4. Effective March 8, 2013, CANTILO & BENNETT, L.L.P., was appointed SDR of Santa Fe. 3 RR PX2. On April 5, 2013, the Receivership Court entered an Order Appointing Liquidator and Permanent Injunction placing Santa Fe in liquidation and appointing the Commissioner as Liquidator of Santa Fe. 3 RR PX1. The SDR is authorized to (and in this case does) pursue claims on behalf of policyholders and creditors pursuant to TEX. INS. CODE ANN. § 443.154(m). CR 4 ¶2.2; 2 RR 62 [5-12].

Plaintiff's Original Petition sets out the SDR's causes of action and claims against Rich. CR 3-21. Not one asserts a "fee dispute." Instead, the SDR asserts specific statutory causes of action, created by the Insurance Code, to "claw back" some or all of the money Appellant received from Santa Fe. None of these causes of action is based on the amount or merit of the fees; instead, they turn largely on the financial condition of Santa Fe at various points in time during which Rich was receiving funds from the company. In addition, the SDR asserts the tort causes of action of negligence, breach of fiduciary duty and aiding and abetting breach of fiduciary duty.

**B.    Appellant's Representation**

On June 5, 2008, Gamma Group, Inc. ("Gamma Group"), entered into an engagement agreement with Appellant for legal representation with respect to the filing and prosecution of a suit against Home State County Mutual Insurance Company for indemnity based on the underlying lawsuit in Cause No. 02-11063-J, *Transatlantic Reinsurance Company, et al. v. Gamma Group, Inc., et al.* (the indemnity claim is referred to as the "Home State Claim"), in the 191st Judicial District Court, Dallas County, Texas.  3 RR PX9.  Santa Fe was not a party to the litigation.  2 RR 49.  Gamma Group is neither a parent, nor a subsidiary of Santa Fe, but is an entity owned by Santa Fe officer and director, James D. Maxwell.  3 RR PX5; 2 RR 63-64 [19-l].  However, estate records reflect that Santa Fe paid Rich over $28,000.00 for legal fees and services relating to the Home State Claim. 3 RR PX11.

On July 21, 2008, Gamma Group entered into another engagement agreement with Appellant for legal representation in the proceedings on remand from the court of appeals and Supreme Court in Cause No. 02-11063-J, *Transatlantic Reinsurance Company, et al. v. Gamma Group, Inc., et al.* (the representation in this matter is referred to as the "Transatlantic Lawsuit"), in the 191st Judicial District Court, Dallas County, Texas.  3 RR PX10.  Santa Fe was not a party to the litigation.  Gamma Group is neither a parent, nor a subsidiary of

Santa Fe, but is an entity owned by Santa Fe officer and director, James D. Maxwell. However, estate records reflect that Santa Fe paid Rich over $41,000.00 for legal fees and services relating to the Transatlantic Lawsuit. 3 RR PX11.

On August 14, 2008, Appellant entered an appearance for Gamma Group, Santa Fe, CSi Agency Services, Inc., Alpha Partners, Ltd., James D. Maxwell, and James T. Maxwell in Cause No. 3:07-CV-1985-B, *Lincoln General Insurance Co. v. US Auto Insurance Services, Inc., et al.* ("Lincoln General I Lawsuit"), in the U.S. District Court, Northern District of Texas, Dallas Division. 3 RR PX 13. The Lincoln General I lawsuit was filed on November 27, 2007, and dismissed on May 7, 2009. 3 RR PX 13; 2 RR 52-53.

Eighteen months later, Rich appeared as counsel to James T. Maxwell, James D. Maxwell, Santa Fe, Alpha Partners, Ltd., CSi Agency Services, Inc., and Gamma Group in Cause No. 3:10-CV-02307-B, *Lincoln General Insurance Co. v. US Auto Insurance Services, Inc., et al.* (the "Lincoln General II Lawsuit"), in the U.S. District Court, Northern District of Texas, Dallas Division. 3 RR PX14. The Lincoln General II Lawsuit remains pending. 2 RR 54 [8-22].

There is no evidence in the record of any agreements between Santa Fe and Rich relating to Santa Fe's payment to Rich of legal fees and expenses for the Home State Claim, the Transatlantic Lawsuit, or Lincoln General II Lawsuit. There is no evidence of any board of director resolutions, board minutes, or

5

shareholder directives authorizing Santa Fe to retain Rich in any manner or to pay the personal legal fees and expenses of Santa Fe's management or the companies they controlled. Further, Appellant proffered no records purporting to reflect Santa Fe's agreement to arbitrate any claims against Rich arising under the Texas Insurer Receivership Act or any tort claims.

Santa Fe was placed into receivership in March 2013, and this action was filed against Appellant and the other defendants in February 2015. Appellant filed his *Motion to Compel Arbitration and Plea in Abatement* on April 30, 2015. CR 24-34. Appellee filed its *Response in Opposition* on June 5, 2015. CR 35-102. In the sworn response, Appellee denied the existence of an agreement to arbitrate, in whole or in part, and asserted numerous defenses to the motion. *Id*.

The district court held an evidentiary hearing on June 22, 2015. Appellant presented no evidence in support of the motion to compel arbitration. At no time did Appellant tender the alleged arbitration agreement relating to the Lincoln General I Lawsuit (or any other agreement purporting to contain an agreement to arbitrate) into evidence. Likewise, Appellant presented no evidence in support of his argument (App. Br. at 6) that the SDR of Santa Fe is bound by agreements between Rich and Gamma Group. In fact, Appellant was called by Appellee as a witness (2 RR 46-54) but was asked no questions by Appellant's counsel. 2 RR 54-55.

At the evidentiary hearing, Appellee established that Santa Fe was in receivership (2 RR 56 [8-10]), and that neither the Receiver nor the SDR had entered into any agreements to arbitrate with Appellant. *Id.* at 58 [2-15]. Appellee further established that it asserts statutory causes of action against Appellant, arising under the Texas Insurer Receivership Act and the Texas Uniform Fraudulent Conveyance Act ("TUFTA"), in addition to common law claims. Appellee presented uncontroverted evidence that Santa Fe had paid money to Appellant for his work performed solely for Gamma Group in the Home State Claim and Transatlantic Lawsuit, and that the SDR seeks to recover that money in this lawsuit. 2 RR 61 [3-21].

## SUMMARY OF THE ARGUMENT

The district court correctly denied Appellant's motion to compel arbitration. Appellee is the SDR appointed pursuant to section 443.151 of the Texas Insurance Code to oversee the liquidation of Santa Fe, an insolvent Texas auto insurance company. Appellant failed to meet his burden of proof to establish that an arbitration agreement existed, even failing to introduce any evidence at the evidentiary hearing on his motion. In the event the court considers matters outside the record, and considers what is referred to as the Lincoln General I agreement, Appellee's claims fall outside the scope of any alleged arbitration agreement as to both the facts underlying the claims and the causes of action asserted.

7

Appellee sues Appellant based on four separate transactions, not one general claim as alleged by Appellant. Appellee's statutory causes of action are not subject to arbitration because they are brought on behalf of the policyholders and creditors of the now insolvent insurance company. That company's management could not agree to arbitrate claims that did not exist before receivership. Appellant could not have contracted with Santa Fe to arbitrate Appellee's statutory claims because they did not exist until after receivership. Finally, the Federal Arbitration Act (the "FAA") is reverse pre-empted here because this lawsuit arises from an insurer delinquency proceeding under the Texas Insurer Receivership Act, a complex and comprehensive scheme of insurance regulation.

## ARGUMENT

### I.     Standard of Review and Applicable Law

A party seeking to compel arbitration must first establish the existence of a valid arbitration agreement, and then show that the claims asserted are within the scope of the agreement. *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 605 (Tex. 2005) (per curiam); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005); *AXA Financial, Inc. v. Roberts*, No. 03-07-00079-CV, 2007 WL 2403210, at *4 (Tex. App.—Austin 2007, no pet.). Only if a valid agreement to arbitrate is found, should the court then examine the entire writing as a whole in an effort to harmonize and give effect to all the provisions of the contract so that none

8

will be rendered meaningless. *J.M. Davidson, Inc., v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 158 (Tex. 1951). A clause requiring arbitration will be enforced according to its plain meaning unless this would defeat the intention of the parties. The parties' agreement and intent to submit to arbitration must be unambiguous. *In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 875 (Tex. App.—El Paso 2005, orig. proceeding); *Porter & Clements, L.L.P. v. Stone*, 935 S.W.2d 217, 220 (Tex. App.—Houston [1st Dist.] 1996, orig. proceeding).

## II.     The District Court Correctly Denied the Motion to Compel Arbitration. [Response to Appellant's Points I and II]

### A.     Appellant failed to prove the existence of an agreement to arbitrate.

Appellant contends that language in the Lincoln General I agreement requires the arbitration of all disputes between Rich and Appellee. App. Br. at 14. However, Appellant's argument skips a step. Before considering whether a claim falls within the scope of an agreement, the movant must first establish that there is an agreement to arbitrate.

A motion to compel arbitration is similar to a motion for partial summary judgment, subject to the same evidentiary standards. *In re Jebbia*, 26 S.W.3d 753, 756-57 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding). No presumption of arbitrability arises until the court has found there is an enforceable

9

arbitration agreement. *Id.* To compel arbitration on a summary motion, a trial court must first determine as a matter of law that the parties have agreed to arbitrate. *Id.* (citing *Jack B. Anglin Co. Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992). This burden of establishing the existence of the arbitration agreement is **generally evidentiary**. *See In re Oakwood Mobile Homes,* 987 S.W.2d 571, 573 (Tex. 1999) (establishing the existence of the agreement, "Here, Oakwood met its **burden of presenting evidence** of an arbitration agreement that governs the dispute between the parties.") (emphasis added; citations omitted); *In re Koch Indus., Inc.*, 49 S.W.3d 439, 444 (Tex. App.—San Antonio 2001, orig. proceeding) ("The party seeking arbitration has the initial burden to present evidence of an arbitration agreement."). To resist summary arbitration, the non-movant need only raise an issue of material fact as to the party's entitlement to arbitration. *In re Jebbia,* 26 S.W.3d at 757.

Appellant argues that either the Texas Arbitration Act or the FAA requires arbitration of the claims brought against him by the SDR. App. Br. at 3-4. As discussed fully below, Appellee denies that the FAA applies here. However, the analysis under either statute is the same. When Texas courts are called on to decide if disputed claims fall within the scope of an arbitration clause under the FAA, Texas procedure controls that determination. *Jack B. Anglin Co. Inc.*, 842 S.W.2d at 268 (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)).

As movant, Appellant had the burden to prove the existence of an agreement to arbitrate. A party seeking to compel arbitration must also establish its right to that remedy under the contract. *In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 875 (Tex. App.—El Paso 2005, orig. proceeding); *Porter & Clements, L.L.P. v. Stone*, 935 S.W.2d 217, 220 (Tex. App.—Houston [1st Dist.] 1996, orig. proceeding).

Appellant failed to admit into evidence any exhibit purporting to contain an agreement to arbitrate. Instead, Appellant relies solely on a pre-receivership agreement between Appellant and Santa Fe (and others) for representation in the Lincoln General I Lawsuit. The document was attached to the unverified motion to compel arbitration and no affidavit was attached to the motion. CR 103-180. Appellant also attached the document to his brief to this Court as Appendix Tab B. App. Br. at App'x Tab B. However, the document was never proffered or admitted into evidence at the evidentiary hearing. Moreover, Appellee denied, in both its sworn response to the motion and at the hearing, the existence of any agreement to arbitrate. CR 46; 2 RR 58 [2-15].

Arbitration cannot be ordered in the absence of an agreement to arbitrate. *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994). Thus, despite strong presumptions that favor arbitration, a valid agreement to arbitrate is a settled, threshold requirement to compel arbitration. *See In re Kellogg Brown & Root,*

11

*Inc.*, 166 S.W.3d 732, 737-38 (Tex. 2005) (orig. proceeding). "[T]he presumption in favor of arbitration arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists, because the purpose of the FAA was to make arbitration agreements as enforceable as other contracts, not more so." *Id.*

When deciding whether the parties have agreed to arbitrate, the courts do not resolve doubts or indulge a presumption in favor of arbitration. *In re Jebbia*, 26 S.W.3d 753, 757 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding); *see also American Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537-38 (5th Cir. 2003). Instead, standard contract principles should be considered to determine whether a valid arbitration agreement exists. *Lang*, 321 F.3d at 538; *see also Ysleta Indep. Sch. Dist. v. Godinez*, 998 S.W.2d 700, 702 (Tex. App.—El Paso 1999, no pet.). In this case, no agreement exists to arbitrate the claims the SDR brings against Rich.

**B.      Appellee's causes of action are not "fee disputes" and fall outside the scope of any arbitration agreement.**

Appellee's causes of action arise from four separate legal matters handled by Appellant: the Home State Claim, the Transatlantic Lawsuit, the Lincoln General I Lawsuit and the Lincoln General II Lawsuit. There is no evidence that there are any agreements between Appellant and Santa Fe for the Home State Claim, the Transatlantic Lawsuit, and the Lincoln General II Lawsuit. The alleged agreement

for the Lincoln General I Lawsuit is not in evidence.[1]  However, even if the Court considers matters outside the record, the SDR's causes of action are still not subject to arbitration.

Appellant denies that the Home State Claim and Transatlantic Lawsuit are even part of this lawsuit.  App. Br. at 20.  However, Appellee expressly sued Appellant for claims relating to the Home State Claim and Transatlantic Lawsuit separate and apart from the claims arising from the Lincoln General I and Lincoln General II Lawsuits.  Plaintiff's Original Petition (CR 9) states expressly:

> Nevertheless, the Maxwells, the persons ultimately controlling Santa Fe, caused Santa Fe to pay the legal fees and expenses of all defendants in the Lincoln General litigation.  **They also caused Santa Fe to pay the legal fees and expenses for matters involving affiliate Gamma Group.**  (CR 9, Plaintiff's Original Petition, ¶7.7) (emphasis added).

The uncontradicted evidence presented at the hearing establishes that the Home State Claim and the Transatlantic Lawsuit are legal matters relating solely to Gamma Group.  2 RR 49 [3-15].

Appellant chose not to present any evidence at the hearing before the district court.  Nevertheless, in his brief he now argues that there is some relationship between the Home State Claim and Transatlantic Lawsuit and the Lincoln General I agreement.  App. Br. at 19-20.  The only evidence on this point establishes the

---

[1] Appellee denies that the agreement between Appellant and Santa Fe for services in the Lincoln General I Lawsuit is before the Court.  However, since Appellant's entire argument rests on the document, Appellee responds to the arguments but without waiver of the fact that the alleged agreement was never offered or admitted into evidence.

contrary. Appellant admitted that there was no contract with Santa Fe regarding the Home State Claim and Transatlantic Lawsuit. 2 RR 49 [3-6]. Likewise, Appellant conceded that there was no separate agreement for the Lincoln General II Lawsuit. 2 RR 51 [17-23].

The paragraph in the non-admitted Lincoln General I agreement concerning arbitration refers specifically to "fee disputes" and "disputes regarding payment." None of the SDR's causes of action are "fee disputes" or "disputes regarding payment." Instead, Appellee's statutory claims arise under its status as the SDR under the Insurer Receivership Act. The SDR's common law claims – negligence, breach of fiduciary duty and aiding and abetting breach of fiduciary duty – all relate to Appellant's conflicts of interest.

Arbitration is a creature of contract, and a clause requiring arbitration will be interpreted under contract principles. *In re Big 8 Food Stores, Ltd.*, 166 S.W.3d at 876. *Greenberg Traurig, LLP v. National Am. Ins. Co*., the only case cited by Appellant to argue that the claims at issue are within the scope of the non-admitted Lincoln General I agreement, considered a very broad arbitration clause. *Greenberg Traurig, LLP v. Nat'l Am. Ins. Co.*, 448 S.W.3d 115 (Tex. App.— Houston [14th Dist.] 2014, reh'g overruled Oct. 7, 2014). In that case, the provision stated:

> By signing this letter, Clients agree that, to the extent permitted by law, any dispute arising out of or relating to this Agreement, our

14

relationship, any billing statements forwarded to Clients or our services, including but not limited to any alleged claims for legal malpractice, breach of fiduciary duty, fraud, breach of contract or other claim against the Firm for any alleged inadequacy of such services, shall be resolved by submission to confidential, final, binding arbitration in Dallas, Texas ....

*Id.* at 118.

Likewise, the attorney arbitration clause at issue in the recent Texas Supreme Court decision, *Royston, Rayzor, Vickery & Williams, L.L.P. v. Lopez*, is similarly broad:

While we would hope that no dispute would ever arise out of our representation or this Employment Contract, you and the firm agree that any disputes arising out of or connected with this agreement (including, but not limited to the services performed by any attorney under this agreement) shall be submitted to binding arbitration in Nueces County, Texas, in accordance with appropriate statutes of the State of Texas and the Commercial Arbitration Rules of the American Arbitration Association (except, however, that this does not apply to any claims made by the firm for the recovery of its fees and expenses).

*Royston, Rayzor, Vickery & Williams, L.L.P. v Lopez*, No. 13-1026, 2015 WL 3976101 (Tex. June 26, 2015).

In contrast, the arbitration language in the alleged Lincoln General I agreement at issue here is much narrower in scope. Had the parties wanted to agree to arbitrate "any dispute" arising from Appellant's representation of Santa Fe in the Lincoln General I Lawsuit, they could have said so. Instead, the agreement limits the scope to "fee disputes." If the parties had intended to arbitrate something

15

other than contractual fee disputes, they could have crafted an agreement like that in *Greenberg Traurig* or *Royston, Rayzor*. They did not. The alleged Lincoln General I agreement makes no mention of claims such as negligence, breach of fiduciary duty or aiding and abetting breach of fiduciary duty – all claims asserted by Appellee. It is likewise silent on the SDR's statutory claims because they did not exist before receivership and could not be made arbitrable by Santa Fe's management.

**C.    The SDR's statutory causes of action are not arbitrable.**

Appellee SDR asserts causes of action created by the Texas Insurer Receivership Act against Appellant. CR 14. Specifically, Appellee sues under TEX. INS. CODE ANN. § 443.205 and § 443.204. *See* TEX. INS. CODE ANN. §§ 443.204-205 (West 2015); App'x Tab A. These receivership causes of action fall far beyond the narrow scope of the language in the alleged Lincoln General I agreement.

In 2005, the Texas Legislature enacted the Texas Insurer Receivership Act. TEX. INS. CODE ANN. § 443.001 *et seq.* (West 2015). The statute's specifically enumerated purpose is to protect the "interests of insureds, claimants, creditors, and the public generally through," *inter alia*, "(3) enhanced efficiency and economy of liquidation, through clarification of the law, to minimize legal uncertainty and litigation; [and] (4) apportionment of any unavoidable loss in

16

accordance with the statutory priorities set out in this chapter; ….” TEX. INS. CODE ANN. § 443.001(e)(3, 4) (West 2015).

Here, along with Appellant, the SDR is suing Santa Fe’s shareholders, former management, other legal counsel, and Frost Bank. The SDR brings this suit under the authority vested in it by Chapter 443 of the Texas Insurance Code. CR 4. Specifically, the petition alleges that suit is brought on behalf of policyholders and creditors under section 443.154(m), which states that:

> [t]he liquidator may prosecute any action that may exist on behalf of the creditors, members, policyholders, shareholders of the insurer, or the public against any person, except to the extent that a claim is personal to a specific creditor, member, policyholder, or shareholder and recovery on such claim would not inure to the benefit of the estate.

TEX. INS. CODE ANN. § 443.154(m) (West 2015). CR 4 ¶2.2; 2 RR 62 [5-12].

When a receiver pursues statutory claims on behalf of creditors, it is not bound by any agreement to arbitrate entered into by the now insolvent company. In *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith*, the United States Third Circuit Court of Appeals was asked to examine an expansive arbitration clause which covered “any controversy between [the parties] arising out of [plaintiff’s] business or this agreement….” *Hays & Co. v. Merill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1153 (3d Cir. 1989). The court held that claims asserted by the trustee brought under powers granted to it by the bankruptcy code are not derivative of the bankrupt. Rather, they are creditor claims that the code

17

authorizes the trustee to assert on their behalf. *Id.* at 1155. "Thus, there is no justification for binding creditors to an arbitration clause with respect to claims that are not derivative from one who was a party to it." *Id.* The court found justification for its position in *Allegaert v. Perot*, which also found that fraudulent and preferential transfers are "statutory causes of action belonging to the trustee, not the bankrupt, and the trustee asserts them for the benefit of the bankrupt's creditors, whose rights the trustee enforces." *Allegaert v. Perot*, 548 F. 2d 432, 436 (2d Cir. 1977).

The United States Fifth Circuit addressed this issue in the bankruptcy context in a pair of cases, *In re Gandy* and *In re National Gypsum Co.*, and followed *Hays*, finding that decision makes "eminent sense." *In re National Gypsum*, 118 F.3d 1056, 1066 (5th Cir. 1997); *In re Gandy*, 299 F.3d 489, 495-96 (5th Cir. 2002). In both cases, the Fifth Circuit was faced with the issue of which of the bankruptcy trustees' claims, if any, should be sent to arbitration. The *Gandy* court held that the causes of action asserted under sections 544, 547, and 548 of the bankruptcy code "are in essence created by the Bankruptcy Code for the benefit of creditors of the estate" and are therefore not subject to mandatory arbitration. *In re Gandy*, 299 F.3d at 497; 11 U.S.C. §§ 544, 547-548; App'x Tab B. The *National Gypsum* court concluded, "as did the Third Circuit in *Hays*, we believe that non-enforcement of an otherwise applicable arbitration provision turns on the

18

underlying nature of the proceeding." *In re National Gypsum*, 118 F.3d at 1067. In both cases, the courts held that claims that the trustee inherited from the debtor would be subject to arbitration, but claims the derived from statute were not subject to mandatory arbitration. *In re Gandy*, 299 F.3d at 495; *In re National Gypsum*, 118 F.3d at 1067.

Federal arbitration decisions such as these are instructive. As the Texas Supreme Court has stated, "we may find guidance in court decisions addressing both [the FAA and TAA] acts." *G.T. Leach Builders, L.L.C. v. Sapphire V.P., L.P.,* 458 S.W.3d 502, 532 n.14 (Tex. 2015). Such federal cases are particularly relevant when they consider analogous statutes. The SDR's statutory claims under sections 443.204 and 443.205 of the Texas Insurer Receivership Act (App'x Tab A), are analogous to the Bankruptcy Code statutes cited in the *Hays*, *Gandy* and *National Gypsum* opinions. App'x Tab B.

The statutory causes of action asserted by the Appellee SDR were created by the Texas legislature and set out in the Insurance Code for the benefit of creditors of the estate. The right to pursue them belongs to the SDR, not the insolvent company. Thus, the Appellee's claims in the instant case, derived from statute, are not subject to arbitration. Santa Fe and its management could no more agree to arbitrate the SDR's claims against Appellant than it could mandate arbitration of the SDR's claims against themselves.

In addition to the "strong arm" causes of action created by the Insurer Receivership Act, the SDR also asserts a claim under TUFTA. The United States Fifth Circuit has held that a receiver's claims under TUFTA are not subject to arbitration under the FAA. *See Janvey v. Alguire*, 628 F.3d 164, 185 (5th Cir. 2010) (op. withdrawn on juris. grounds), 647 F.3d 585 (5th Cir. 2011) ("The Employee Defendants provide no contrary support concerning the power of the Receiver to bring a claim under the TUFTA, instead contending that the Receiver merely 'stands in the shoes' of SGC. [n. omitted]. We believe that in this case, the Receiver is acting on behalf of creditors, who are not party to the arbitration agreements and therefore he is not bound by the arbitration agreement.").

Texas case law recognizes the distinction between the SDR's standing on behalf of creditors and its standing on behalf of the insolvent company. *See Meyers v. Moody*, 693 F.2d 1196, 1206 (5th Cir. 1983) ("Moody also argues that Receiver did not have standing to sue on behalf of Empire's shareholders, policyholders or creditors. The law in Texas is to the contrary."); *Cotten v. Republic Nat'l Bank of Dallas*, 395 S.W.2d 930, 941 (Tex. Civ. App.—Dallas 1965, writ ref'd n.r.e.) ("Certainly a receiver…has a right to maintain a suit which is necessary to preserve the corporation's assets and to recover assets of which the corporation has been wrongfully deprived through fraud. In such a suit the receiver may be said to sue as the representative of the corporation and its

creditors, stockholders and policyholders ….”); *Guardian Consumer Fin. Corp. v. Langdeau*, 329 S.W.2d 926, 934 (Tex. Civ. App.—Austin 1959, no pet.) (“When the receiver acts to protect innocent creditors of insolvent corporations…the receiver acts in a dual capacity, as a trustee for both the stockholders and the creditors, and as trustee for the creditors he can maintain and defend actions done in fraud of creditors even though the corporation would not be permitted to do so.”); 65 Am. Jur. 2d *Receivers* § 88 (2015) (“It is a general rule that a receiver stands in the position of a representative and a protector of the interests of creditors…”); *Id.* at § 371 (“A receiver is the embodiment of creditors standing as an agent for them, representing them with the power to do acts that a mere agent of a defunct company could not do, including the power to bring suit on their behalf.”). The uncontroverted evidence before the district court established that Appellee brings this suit on behalf of the Santa Fe’s creditors. CR 4 ¶ 2.2; 2 RR 62 [5-12].

Appellant argues that section 443.005(e) of the Insurer Receivership Act obligates the SDR to arbitrate all claims. App. Br. at 11-12. Of course, Appellant still needs to establish the existence of an agreement to arbitrate and the scope of any such agreement, before the application of section 443.005(e) is even considered. Appellant fails both challenges.

Section 443.005(e) applies only to those claims inherited from Santa Fe, not causes of action arising from the receivership. Prior to receivership, Appellant did not have the contractual right to arbitrate claims arising under the Insurer Receivership Act or TUFTA. Nor did Santa Fe have the right to assert such claims or to agree to arbitrate the SDR's claims. None of the cases cited by Appellant for this argument holds that statutory receivership claims are subject to arbitration.

Appellant relies heavily on the Texas Supreme Court's decision in *El Paso Elec. Co. v. Tex. Dept. of Ins.*, 937 S.W.2d 432, 436 (Tex. 1996) for the proposition that the SDR "stands in the shoes" of Santa Fe in the instant case. App. Br. at 11-12, 18. There, the court held that the receiver was acting on behalf of the Board of Insurance, and was subject to potential liability under Chapter 105 of the Texas Civil Practice and Remedies Code (which allows a litigant to recover fees and expenses when a state agency asserts a frivolous claim). 937 S.W.2d at 433. However, Appellant's reliance on *El Paso* is misplaced, as the claims pursued by the receiver in that case were those of the insolvent company in question (relating to annuities it had issued), not statutory claims arising post-receivership. *Id.* at 433-34. Moreover, there was no arbitration issue. Further, its specific holding was overturned by the enactment of the Insurer Receivership Act. *See* TEX. INS. CODE ANN. § 443.011(f) (West 2015) ("The receiver may not be

22

deemed a governmental entity for the purposes of any state law awarding fees to a litigation who prevails against a governmental entity").

The decision in *Webb v. Reynolds Transp., Inc*., 949 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, no pet.) serves Appellant no better. *Webb* did not involve arbitration. Rather, the question was whether the failure of an insurer to include an experience modification endorsement in the original insurance policy defeats the SDR's right to recover an additional premium based upon the experience modifier issued for the policy. Unlike the instant case, the cause of action in *Webb* did not arise from the insolvent insurance company's receivership, but rather an insurance policy issued pre-receivership. The SDR in *Webb* was not asserting any statutory claims.

Finally, the decision relied upon by Appellant in *Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 625 (6th Cir. 2003), is as easily distinguishable here as it was by the Fifth Circuit in *Janvey v. Alguire*. *See Janvey*, 628 F.3d at 184 n.12. In *Javitch*, the receiver brought suit against a number of brokers and financial institutions that provided services to the insolvent corporation. *Javitch*, 315 F.3d at 621. The plaintiff receiver sued on behalf of the insolvent corporation, not its creditors, and thus was obligated by the corporation's arbitration agreements. *Id.* In *Janvey*, the receiver's fraudulent transfer claims were brought on behalf of defrauded creditors under TUFTA. *Janvey*, 628 F.3d at 168. In distinguishing

23

*Javitch*, the *Janvey* court held that because that the receiver was acting on behalf of creditors who were not party to the arbitration agreements at issue, the receiver was not bound by the arbitration agreement. *Id.* at 185.

Here, the Appellee SDR is endowed by statute with the right (and obligation) to pursue claims on behalf of policyholders and creditors. Appellee's witness established without challenge that this suit is brought solely on their behalf. 2 RR 62 [5-12]; 2 RR 68 [8-13]. As was the case in *Janvey*, the SDR is acting on behalf of creditors who are not party to the arbitration agreement. Therefore, the trial court correctly denied the motion to compel arbitration because the SDR is not bound by the agreement asserted by Appellant.

## D. The Federal Arbitration Act is reverse pre-empted by operation of McCarron-Ferguson Act.

Appellant contends that the FAA requires that his motion to arbitrate be granted. CR 24 ¶1.3. However, in this case the FAA is reverse pre-empted by operation of the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015 ("McCarran-Ferguson"). Appellee is the duly appointed SDR under the Insurer Receivership Act, TEX. INS. CODE ANN. § 443.001 *et seq.* Appellant's argument that the SDR's statutory causes of action are subject to a pre-receivership arbitration agreement ignores the unique legal rights and obligations conferred upon the SDR under the Insurer Receivership Act. Receivers appointed under the statute are "to protect the

24

interests of insureds, claimants, creditors, and the public generally...." TEX. INS. CODE ANN. § 443.001(e) (West 2015). The statute provides receivers with

> a comprehensive scheme for the receivership of insurers and those subject to this chapter as part of the regulation of the business of insurance in this state because proceedings in cases of insurer insolvency and delinquency are deemed an integral aspect of the business of insurance and are of vital public interest and concern.

*Id.* at (e)(7).

While the SDR does not concede that the FAA even applies to this purely Texas-based dispute[2], in the event that it did, it is reverse pre-empted under McCarran-Ferguson. *See Munich Reinsurance Co. v. Crawford*, 141 F.3d 585 (5th Cir. 1998). In *Munich Re*, the Fifth Circuit considered whether the FAA required the receiver of an insolvent Oklahoma insurance company to arbitrate a dispute. The court held that

> by operation of the McCarran-Ferguson Act, a federal act that permits states to exert broad power over the insurance industry, state laws regulating the business of insurance may suspend federal remedies based on conflicting federal statutes--here, the FAA. We therefore hold that the FAA is reverse pre-empted under the McCarran-Ferguson Act, thereby leaving the district court without the power to compel arbitration in this case.

*Id.* at 595-96.

---

[2] Appellant again argues outside the record with his contention that the FAA is applicable. App. Br. at 4 n.3. The reference is to a document attached to Appellant's hearing brief (CR 147), that was never offered or admitted into evidence. The evidence before the district court established that Appellant and Santa Fe are located in Dallas County Texas and that all services and all payments were made in Dallas County Texas. CR 6 ¶6.3; 2 RR 67 [6-8].

The *Munich Re* court found that by operation of McCarran-Ferguson, the FAA was reverse pre-empted because Oklahoma had enacted a "complex and comprehensive scheme of insurance regulation." 141 F.3d at 591, 595-96. Likewise, the Texas Insurer Receivership Act is a complex and comprehensive scheme of insurance regulation. *See* TEX. INS. CODE ANN. § 443.001(e)(7) (West 2015); *See also Bard v. Myers*, 839 S.W.2d 791, 797 (Tex. 1992) (referring to Art. 21.28 of the Insurance Code, the predecessor to Chapter 443). Thus, McCarran-Ferguson reverse pre-empts the FAA in the instant case as well.

Appellant's effort to distinguish the *Munich Re* holding ignores entirely the recent Texas Supreme Court opinion citing it. In *The Fredericksburg Care Co., L.P. v. Perez*, 461 S.W.3d 513 (Tex. 2015), the Texas Supreme Court cited *Munich Re* favorably no fewer than five times, and followed the Fifth Circuit's approach when analyzing a reverse pre-emption case involving an arbitration clause. The Texas Supreme Court also cited *U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 504 (1993), holding that insurance liquidation statutes are "integrally related to the performance of insurance contracts." *Fredericksburg*, 461 S.W.3d at 525. *Munich Re's* holding that the FAA is reverse pre-empted by insurance liquidation statutes is the law in Texas.

Even the Delaware bankruptcy court opinion cited in Appellant's brief, *Northwestern Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 321 B.R.

26

120, 123-28 (Bankr. D. Del. 2005), is limited to what are referred to in bankruptcy law as "non-core" claims. Such claims are those that arose prior to bankruptcy and are not created by the bankruptcy proceeding itself. Here, the Appellee asserts statutory causes of action arising under the Texas Insurer Receivership Act and TUFTA, so *Northwestern* is unpersuasive. Thus, Appellant fails to distinguish the *Munich Re* holding that the FAA is reverse pre-empted by state insurance insolvency laws.

The outcome in *Munich Re* is not unique. Each state has enacted its own statutory procedure relating to the insolvency of insurance companies within its borders. *U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491 (1993); *Fidelity Assurance Ass'n v. Sims*, 318 U.S. 608, 615 (1943); *Universal Marine Ins. Co., Ltd. v. Beacon Ins. Co.*, 768 F.2d 84 (4th Cir. 1985). Federal courts have long held that state laws protecting or regulating the relationship between the insurance company and the policyholder, directly or indirectly, including laws providing for the rehabilitation, liquidation or dissolution of insurance companies are "laws regulating the business of insurance." *SEC v. Nat'l Sec., Inc., et al.*, 393 U.S. 453 (1969); *Levy v. Lewis*, 635 F.2d 960 (2nd Cir. 1980); *Washburn v. Corcoran*, 643 F. Supp. 554 (S.D. N.Y. 1985).

Texas has a comprehensive scheme to oversee the liquidation of insolvent insurers as part of the regulation of the business of insurance in this state. TEX.

27

INS. CODE ANN. § 443.001(e)(7) (West 2015). The SDR's statutory claims are not subject to arbitration under the FAA because those claims arose only after receivership and are asserted on behalf of policyholders and creditors. To require the SDR to arbitrate these claims goes against established authority, public policy and the enumerated purposes of the Texas Insurer Receivership Act.

## CONCLUSION AND PRAYER

For all of the reasons set forth herein, Appellee CANTILO & BENNETT, L.L.P., Special Deputy Receiver of Santa Fe Auto Insurance Company, respectfully requests that the Court affirm the entry of the order denying motion to compel arbitration and plea in abatement of the trial court and grant Appellee such other and further relief to which it is entitled.

Respectfully submitted,

FULLER LAW GROUP

/s/Christopher Fuller
Christopher Fuller
State Bar No. 07515500
4612 Ridge Oak Drive
Austin, Texas 78731
(512) 470-9544 (Telephone)
cfuller@fullerlaw.org

*Counsel for Appellee*
*CANTILO & BENNETT, L.L.P.*
*Special Deputy Receiver of*
*Santa Fe Auto Insurance Company*

28

**CERTIFICATE OF COMPLIANCE**

This document complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of rule 9.4(i), if applicable, because it contains 6,255 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

/s/Christopher Fuller
Christopher Fuller

**CERTIFICATE OF SERVICE**

In compliance with Texas Rule of Appellate Procedure 9.5, the undersigned counsel hereby certifies that on August 26, 2015, a true and correct copy of Appellee's Brief was served by e-Service, e-Mail and/or Facsimile to all counsel of record as follows:

| | |
|---|---|
| Alan B. Rich | David P. Boyce |
| LAW OFFICE OF ALAN B. RICH | WRIGHT & GREENHILL, P.C. |
| 1201 Elm Street, Suite 4244 | 221 West 6th Street, Suite 1800 |
| Dallas, Texas 75270 | Austin, Texas 78701 |
| Email: arich@alanrichlaw.com | Email: dboyce@w-g.com |
| *Counsel for Appellant* | |

/s/Christopher Fuller
Christopher Fuller

# No. 03-15-00408-CV

## In the Third Court of Appeals
## Austin, Texas

**ALAN B. RICH D/B/A LAW OFFICE OF ALAN B. RICH,**
*Appellant,*

v.

**CANTILO & BENNETT, L.L.P.,**
**SPECIAL DEPUTY RECEIVER OF SANTA FE AUTO INSURANCE COMPANY,**
*Appellee.*

APPEAL FROM CAUSE NO. D-1-GN-15-000799
98TH JUDICIAL DISTRICT COURT OF TRAVIS COUNTY, TEXAS
HON. AMY CLARK MEACHUM PRESIDING

## APPENDIX TO APPELLEE'S BRIEF

TEX. INS. CODE ANN. § 443.204 and § 443.205.................................................Tab A

11 U.S.C. §§ 544, 547, 548...........................................................................Tab B

# TAB A

Vernon's Texas Statutes and Codes Annotated
  Insurance Code
    Title 4. Regulation of Solvency (Refs & Annos)
      Subtitle C. Delinquent Insurers
        Chapter 443. Insurer Receivership Act (Refs & Annos)
          Subchapter E. Asset Recovery

V.T.C.A., Insurance Code § 443.204

§ 443.204. Voidable Preferences and Liens

Effective: September 1, 2007
Currentness

(a) A "preference" is a transfer of any interest in property of an insurer that:

(1) is made to or for the benefit of a creditor and for or on account of an antecedent debt and is made or suffered by the insurer within two years preceding the filing of a successful petition commencing delinquency proceedings; and

(2) enables the creditor to receive more than the creditor would receive if the insurer were liquidated under this chapter, the transfer had not been made, and the creditor was entitled to receive payment of the debt to the extent provided by this chapter.

(b) Any preference may be avoided by the receiver if:

(1) the insurer was insolvent at the time of the transfer;

(2) the transfer was made within 120 days before the date of filing of the petition commencing delinquency proceedings;

(3) the creditor receiving the transfer or to be benefited by the transfer, or the creditor's agent acting with reference to the transfer, had, at the time the transfer was made, reasonable cause to believe that the insurer was insolvent or was about to become insolvent; or

(4) the creditor receiving the transfer was:

(A) an officer or director of the insurer;

(B) an employee, attorney, or other person who was in fact in a position to effect a level of control or influence over the actions of the insurer comparable to that of an officer or director, without regard to whether the person held that position; or

(C) an affiliate.

(c) The receiver may not avoid a transfer under this section:

(1) to the extent that the transfer was:

(A) intended by the insurer and the creditor to or for whose benefit the transfer was made to be a contemporaneous exchange for new value given to the insurer and in fact was a substantially contemporaneous exchange; or

(B) made in the ordinary course of business or financial affairs between the insurer and the transferee and made according to ordinary business terms in payment of a debt incurred by the insurer in the ordinary course of business or financial affairs of the insurer and the transferee; or

(2) to or for the benefit of a creditor, to the extent that, after the transfer, the creditor gave new value to or for the benefit of the insurer that was:

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the insurer did not make an otherwise unavoidable transfer to or for the benefit of the creditor.

(d) For purposes of this section:

(1) a transfer of property other than real property is deemed to be made or suffered at the time the transfer becomes so far perfected that any subsequent lien obtainable by legal or equitable proceedings on a simple contract could not become superior to the rights of the transferee;

(2) a transfer of real property is deemed to be made or suffered when the transfer is so far perfected that a subsequent bona fide purchaser from the insurer could not obtain rights superior to the rights of the transferee;

(3) a transfer that creates an equitable lien is not deemed to be perfected if there are available means by which a legal lien could be created; and

(4) a transfer not perfected prior to the filing of a petition for receivership is deemed to be made immediately before the filing commencing delinquency proceedings.

(e) The provisions of this section apply without regard to whether there are or were creditors who might have obtained liens or persons who might have become bona fide purchasers.

(f) Within the meaning of Subsection (d), "a lien obtainable by legal or equitable proceedings on a simple contract" is a lien arising in the ordinary course of proceedings upon the entry or docketing of a judgment or decree, or upon attachment,

garnishment, execution, or similar process, whether before, upon, or after judgment or decree and whether before or upon levy. The term does not include liens that under applicable law are given a special priority over other liens that are prior in time.

(g) Within the meaning of Subsection (d), a lien obtainable by legal or equitable proceedings could become superior to the rights of a transferee, or a purchaser could obtain rights superior to the rights of a transferee if the consequences would follow only from the lien or purchase itself, or from the lien or purchase followed by any step wholly within the control of the respective lienholder or purchaser, with or without the aid of ministerial action by public officials. A lien could not, however, become superior and a purchase could not create superior rights for the purpose of Subsection (d) through any acts subsequent to the obtaining of the lien or subsequent to the purchase that require the agreement or concurrence of any third party or that require any further judicial action or ruling.

(h) A transfer of property for or on account of a new and contemporaneous consideration that is deemed under Subsection (d) to be made or suffered after the transfer because of delay in perfecting the transfer does not become a transfer for or on account of an antecedent debt if any acts required by the applicable law to be performed to perfect the transfer against liens or bona fide purchasers' rights are performed within 21 days or any period expressly allowed by the law, whichever is less. A transfer to secure a future loan, if the loan is actually made, or a transfer that becomes security for a future loan, has the same effect as a transfer for or on account of a new and contemporaneous consideration.

(i)(1) If any lien deemed voidable under Subsection (b) has been dissolved by the furnishing of a bond or other obligation, the surety on which has been indemnified directly or indirectly by the transfer of or the creation of a lien upon any property of an insurer before the filing of a petition commencing delinquency proceedings under this chapter, the indemnifying transfer or lien is also deemed voidable.

(2) The property affected by any lien deemed voidable under Subsection (b) and Subdivision (1) is discharged from the lien, and that property and any of the indemnifying property transferred to or for the benefit of a surety passes to the receiver, except that the receivership court may on due notice order any lien deemed voidable under this section to be preserved for the benefit of the estate and may direct that a conveyance be executed as may be proper or adequate to evidence the title of the receiver.

(3) Reasonable notice of any hearing in the proceeding shall be given to all parties as required by law, including the obligee of a releasing bond or other like obligation. If an order is entered for the recovery of indemnifying property in kind or for the avoidance of an indemnifying lien, the receivership court may in the same proceeding ascertain the value of the property or lien. If the value of the property or lien is less than the amount for which the property is indemnified or than the amount of the lien, the transferee or lienholder may elect to retain the property or lien upon payment to the receiver of its value, as determined by the receivership court, within a reasonable time determined by the receivership court.

(4) The liability of the surety under a releasing bond or other similar obligation shall be discharged to the extent of the value of the indemnifying property recovered or the indemnifying lien nullified and avoided by the receiver, or if the property is retained under Subdivision (3) to the extent of the amount paid to the receiver.

(j) This section may not be construed to prejudice any other claim by the receiver against any person.

**Credits**

Added by Acts 2005, 79th Leg., ch. 995, § 1, eff. Sept. 1, 2005. Redesignated from V.A.T.S. Insurance Code, art. 21A.204 by Acts 2007, 80th Leg., ch. 730, § 3B.004(a)(1)(E), eff. Sept. 1, 2007; Acts 2007, 80th Leg., ch. 921, § 9.004(a)(1)(E), eff. Sept. 1, 2007.

V. T. C. A., Insurance Code § 443.204, TX INS § 443.204

Current through Chapters effective immediately through Chapter 46 of the 2015 Regular Session of the 84th Legislature

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
    Insurance Code
        Title 4. Regulation of Solvency (Refs & Annos)
            Subtitle C. Delinquent Insurers
                Chapter 443. Insurer Receivership Act (Refs & Annos)
                    Subchapter E. Asset Recovery

V.T.C.A., Insurance Code § 443.205

§ 443.205. Fraudulent Transfers and Obligations

Effective: September 1, 2007
Currentness

(a) The receiver may avoid any transfer of an interest of the insurer in property, any reinsurance transaction, or any obligation incurred by an insurer that was made or incurred on or within two years before the date of the initial filing of a petition commencing delinquency proceedings under this chapter, if the insurer voluntarily or involuntarily:

(1) made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any person to which it was or became indebted on or after the date that the transfer was made or the obligation was incurred; or

(2) received less than a reasonably equivalent value in exchange for the transfer or obligation.

(b) Except to the extent that a transfer or obligation voidable under this section is voidable under other provisions of this chapter, a transferee or obligee that takes for value and in good faith a voidable transfer or obligation has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that the transferee or obligee gave value to the insurer in exchange for the transfer or obligation.

(c) For purposes of this section, a transfer is made when the transfer is so perfected that a subsequent bona fide purchaser from the insurer cannot acquire an interest in the property transferred that is superior to the interest in the property of the transferee, but if the transfer is not so perfected before the commencement of the delinquency proceeding, the transfer is deemed to have been made immediately before the date of the initial filing of the petition commencing delinquency proceedings.

(d) For purposes of this section, "value" means property or satisfaction or securing of a present or antecedent debt of the insurer.

**Credits**
Added by Acts 2005, 79th Leg., ch. 995, § 1, eff. Sept. 1, 2005. Redesignated from V.A.T.S. Insurance Code, art. 21A.205 by Acts 2007, 80th Leg., ch. 730, § 3B.004(a)(1)(E), eff. Sept. 1, 2007; Acts 2007, 80th Leg., ch. 921, § 9.004(a)(1)(E), eff. Sept. 1, 2007.

V. T. C. A., Insurance Code § 443.205, TX INS § 443.205
Current through Chapters effective immediately through Chapter 46 of the 2015 Regular Session of the 84th Legislature

**End of Document**                                                                 © 2015 Thomson Reuters. No claim to original U.S. Government Works.



**TAB  B**

United States Code Annotated
  Title 11. Bankruptcy (Refs & Annos)
    Chapter 5. Creditors, the Debtor, and the Estate (Refs & Annos)
      Subchapter III. The Estate (Refs & Annos)

11 U.S.C.A. § 544

§ 544. Trustee as lien creditor and as successor to certain creditors and purchasers

Effective: June 19, 1998
Currentness

**(a)** The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--

**(1)** a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

**(2)** a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

**(3)** a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

**(b)(1)** Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

**(2)** Paragraph (1) shall not apply to a transfer of a charitable contribution (as that term is defined in section 548(d)(3)) that is not covered under section 548(a)(1)(B), by reason of section 548(a)(2). Any claim by any person to recover a transferred contribution described in the preceding sentence under Federal or State law in a Federal or State court shall be preempted by the commencement of the case.

**CREDIT(S)**
   (Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2596; Pub.L. 98-353, Title III, § 459, July 10, 1984, 98 Stat. 377; Pub.L. 105-183, § 3(b), June 19, 1998, 112 Stat. 518.)

Notes of Decisions (1942)

11 U.S.C.A. § 544, 11 USCA § 544

Current through P.L. 114-37 (excluding P.L. 114-27) approved 7-20-2015

**End of Document**                                                          © 2015 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 11. Bankruptcy (Refs & Annos)
    Chapter 5. Creditors, the Debtor, and the Estate (Refs & Annos)
      Subchapter III. The Estate (Refs & Annos)

11 U.S.C.A. § 547

§ 547. Preferences

Effective: April 1, 2010
Currentness

**(a)** In this section--

**(1)** "inventory" means personal property leased or furnished, held for sale or lease, or to be furnished under a contract for service, raw materials, work in process, or materials used or consumed in a business, including farm products such as crops or livestock, held for sale or lease;

**(2)** "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation;

**(3)** "receivable" means right to payment, whether or not such right has been earned by performance; and

**(4)** a debt for a tax is incurred on the day when such tax is last payable without penalty, including any extension.

**(b)** Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property--

**(1)** to or for the benefit of a creditor;

**(2)** for or on account of an antecedent debt owed by the debtor before such transfer was made;

**(3)** made while the debtor was insolvent;

**(4)** made--

   **(A)** on or within 90 days before the date of the filing of the petition; or

Tab B-2   1

**(B)** between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

**(5)** that enables such creditor to receive more than such creditor would receive if--

**(A)** the case were a case under chapter 7 of this title;

**(B)** the transfer had not been made; and

**(C)** such creditor received payment of such debt to the extent provided by the provisions of this title.

**(c)** The trustee may not avoid under this section a transfer--

**(1)** to the extent that such transfer was--

**(A)** intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

**(B)** in fact a substantially contemporaneous exchange;

**(2)** to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--

**(A)** made in the ordinary course of business or financial affairs of the debtor and the transferee; or

**(B)** made according to ordinary business terms;

**(3)** that creates a security interest in property acquired by the debtor--

**(A)** to the extent such security interest secures new value that was--

**(i)** given at or after the signing of a security agreement that contains a description of such property as collateral;

**(ii)** given by or on behalf of the secured party under such agreement;

**(iii)** given to enable the debtor to acquire such property; and

**(iv)** in fact used by the debtor to acquire such property; and

**(B)** that is perfected on or before 30 days after the debtor receives possession of such property;

**(4)** to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor--

**(A)** not secured by an otherwise unavoidable security interest; and

**(B)** on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

**(5)** that creates a perfected security interest in inventory or a receivable or the proceeds of either, except to the extent that the aggregate of all such transfers to the transferee caused a reduction, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt on the later of--

**(A)(i)** with respect to a transfer to which subsection (b)(4)(A) of this section applies, 90 days before the date of the filing of the petition; or

**(ii)** with respect to a transfer to which subsection (b)(4)(B) of this section applies, one year before the date of the filing of the petition; or

**(B)** the date on which new value was first given under the security agreement creating such security interest;

**(6)** that is the fixing of a statutory lien that is not avoidable under section 545 of this title;

**(7)** to the extent such transfer was a bona fide payment of a debt for a domestic support obligation;

**(8)** if, in a case filed by an individual debtor whose debts are primarily consumer debts, the aggregate value of all property that constitutes or is affected by such transfer is less than $600; or

**(9)** if, in a case filed by a debtor whose debts are not primarily consumer debts, the aggregate value of all property that constitutes or is affected by such transfer is less than $6,225 [1] .

**(d)** The trustee may avoid a transfer of an interest in property of the debtor transferred to or for the benefit of a surety to secure reimbursement of such a surety that furnished a bond or other obligation to dissolve a judicial lien that would have been avoidable by the trustee under subsection (b) of this section. The liability of such surety under such bond or obligation shall be discharged to the extent of the value of such property recovered by the trustee or the amount paid to the trustee.

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

**(e)(1)** For the purposes of this section--

**(A)** a transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee; and

**(B)** a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

**(2)** For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made--

**(A)** at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time, except as provided in subsection (c)(3)(B);

**(B)** at the time such transfer is perfected, if such transfer is perfected after such 30 days; or

**(C)** immediately before the date of the filing of the petition, if such transfer is not perfected at the later of--

**(i)** the commencement of the case; or

**(ii)** 30 days after such transfer takes effect between the transferor and the transferee.

**(3)** For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

**(f)** For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

**(g)** For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section.

**(h)** The trustee may not avoid a transfer if such transfer was made as a part of an alternative repayment schedule between the debtor and any creditor of the debtor created by an approved nonprofit budget and credit counseling agency.

**(i)** If the trustee avoids under subsection (b) a transfer made between 90 days and 1 year before the date of the filing of the petition, by the debtor to an entity that is not an insider for the benefit of a creditor that is an insider, such transfer shall be considered to be avoided under this section only with respect to the creditor that is an insider.

**CREDIT(S)**

(Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2597; Pub.L. 98-353, Title III, §§ 310, 462, July 10, 1984, 98 Stat. 355, 377; Pub.L. 99-554, Title II, § 283(m), Oct. 27, 1986, 100 Stat. 3117; Pub.L. 103-394, Title II, § 203, Title III, § 304(f), Oct. 22, 1994, 108 Stat. 4121, 4133; Pub.L. 109-8, Title II, §§ 201(b), 217, Title IV, §§ 403, 409, Title XII, § 1213(a), 1222, Apr. 20, 2005, 119 Stat. 42, 55, 104, 106, 194, 196.)

Notes of Decisions (3677)

Footnotes

1       Dollar amount as adjusted by the Judicial Conference of the United States. See Adjustment of Dollar Amounts notes set out under this section and 11 U.S.C.A. § 104.

11 U.S.C.A. § 547, 11 USCA § 547

Current through P.L. 114-37 (excluding P.L. 114-27) approved 7-20-2015

**End of Document**            © 2015 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 11. Bankruptcy (Refs & Annos)
    Chapter 5. Creditors, the Debtor, and the Estate (Refs & Annos)
      Subchapter III. The Estate (Refs & Annos)

11 U.S.C.A. § 548

§ 548. Fraudulent transfers and obligations

Currentness

**(a)(1)** The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--

**(A)** made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

**(B)(i)** received less than a reasonably equivalent value in exchange for such transfer or obligation; and

**(ii)(I)** was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

**(II)** was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

**(III)** intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

**(IV)** made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

**(2)** A transfer of a charitable contribution to a qualified religious or charitable entity or organization shall not be considered to be a transfer covered under paragraph (1)(B) in any case in which--

**(A)** the amount of that contribution does not exceed 15 percent of the gross annual income of the debtor for the year in which the transfer of the contribution is made; or

**(B)** the contribution made by a debtor exceeded the percentage amount of gross annual income specified in subparagraph (A), if the transfer was consistent with the practices of the debtor in making charitable contributions.

**(b)** The trustee of a partnership debtor may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, to a general partner in the debtor, if the debtor was insolvent on the date such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

**(c)** Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

**(d)(1)** For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition.

**(2)** In this section--

    **(A)** "value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor;

    **(B)** a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency that receives a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, takes for value to the extent of such payment;

    **(C)** a repo participant or financial participant that receives a margin payment, as defined in section 741 or 761 of this title, or settlement payment, as defined in section 741 of this title, in connection with a repurchase agreement, takes for value to the extent of such payment;

    **(D)** a swap participant or financial participant that receives a transfer in connection with a swap agreement takes for value to the extent of such transfer; and

    **(E)** a master netting agreement participant that receives a transfer in connection with a master netting agreement or any individual contract covered thereby takes for value to the extent of such transfer, except that, with respect to a transfer under any individual contract covered thereby, to the extent that such master netting agreement participant otherwise did not take (or is otherwise not deemed to have taken) such transfer for value.

**(3)** In this section, the term "charitable contribution" means a charitable contribution, as that term is defined in section 170(c) of the Internal Revenue Code of 1986, if that contribution--

    **(A)** is made by a natural person; and

**(B)** consists of--

**(i)** a financial instrument (as that term is defined in section 731(c)(2)(C) of the Internal Revenue Code of 1986); or

**(ii)** cash.

**(4)** In this section, the term "qualified religious or charitable entity or organization" means--

**(A)** an entity described in section 170(c)(1) of the Internal Revenue Code of 1986; or

**(B)** an entity or organization described in section 170(c)(2) of the Internal Revenue Code of 1986.

**(e)(1)** In addition to any transfer that the trustee may otherwise avoid, the trustee may avoid any transfer of an interest of the debtor in property that was made on or within 10 years before the date of the filing of the petition, if--

**(A)** such transfer was made to a self-settled trust or similar device;

**(B)** such transfer was by the debtor;

**(C)** the debtor is a beneficiary of such trust or similar device; and

**(D)** the debtor made such transfer with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made, indebted.

**(2)** For the purposes of this subsection, a transfer includes a transfer made in anticipation of any money judgment, settlement, civil penalty, equitable order, or criminal fine incurred by, or which the debtor believed would be incurred by--

**(A)** any violation of the securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47))), any State securities laws, or any regulation or order issued under Federal securities laws or State securities laws; or

**(B)** fraud, deceit, or manipulation in a fiduciary capacity or in connection with the purchase or sale of any security registered under section 12 or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78*l* and 78*o*(d)) or under section 6 of the Securities Act of 1933 (15 U.S.C. 77f).

**CREDIT(S)**

(Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2600; Pub.L. 97-222, § 5, July 27, 1982, 96 Stat. 236; Pub.L. 98-353, Title III, §§ 394, 463, July 10, 1984, 98 Stat. 365, 378; Pub.L. 99-554, Title II, § 283(n), Oct. 27, 1986, 100 Stat. 3117; Pub.L. 101-311,

Title I, § 104, Title II, § 204, June 25, 1990, 104 Stat. 268, 269; Pub.L. 103-394, Title V, § 501(b)(5), Oct. 22, 1994, 108 Stat. 4142; Pub.L. 105-183, §§ 2, 3(a), June 19, 1998, 112 Stat. 517; Pub.L. 109-8, Title IX, § 907(f), (o)(4) to (6), Title XIV, § 1402, Apr. 20, 2005, 119 Stat. 177, 182, 214.)

Notes of Decisions (1941)

11 U.S.C.A. § 548, 11 USCA § 548
Current through P.L. 114-37 (excluding P.L. 114-27) approved 7-20-2015

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Tab B-3   4